463 So.2d 502 (1985)
STRUCTURAL SYSTEMS, INC., Appellant,
v.
James P. WORTHEN, Appellee.
No. AZ-4.
District Court of Appeal of Florida, First District.
February 11, 1985.
Rehearing Denied March 6, 1985.
*503 Richard H. Weisberg and Robert A. Donahue of Cooper, Rissman & Weisberg, Orlando, for appellant.
Richard I. Cervelli, Naples, for appellee.
THOMPSON, Judge.
This is an appeal from an order finding the carrier at the time of the two prior accidents in 1980 liable for temporary total disability (TTD) benefits and past and future remedial treatment resulting from a subsequent accident occurring in 1983 when it was no longer the carrier. We reverse.
Claimant twisted his left leg while working on some scaffolding on October 24, 1980. He did not report this accident. On the evening of the same date, claimant injured his left knee while playing in an employer sponsored softball game. He was examined after the second accident by Dr. Peterson who found that the claimant had sustained an acute tear of the anterior cruciate ligament with a mild peripheral tear of the anterior medial semilunar cartilage. Claimant missed only one day of work from the October 1980 accidents and the carrier at the time, Hewitt, Coleman and Associates, Inc., paid for all medical bills resulting from the October 1980 accidents.
On December 8, 1980 claimant slipped on an oily spot at work and fell on his left knee. He was again treated by Dr. Peterson who drained the fluid out of his knee and diagnosed the injury as acute hemarthrosis secondary to a hyperflexion strain.
On July 18, 1983 the claimant again sustained an injury to his left knee while playing in an employer sponsored softball game. He was again treated by Dr. Peterson who performed arthroscopic surgery on the left knee on July 22, 1983, reconstructive surgery on the same knee on August 29, 1983 and further surgery on December 28, 1983 for the removal of screws that had been placed in the knee for internal fixation.
On October 31, 1983 claimant filed a claim for TTD benefits retroactive to July 18, 1983, further remedial care, costs, interest, penalties and attorney's fees as a result of the accident occurring on July 18, 1983 or the accidents occurring in October 1980. While this claim was pending, the claimant and his attorney reached an agreement with Johns Eastern Company, Inc., the carrier at the time of the July 18, 1983 accident, for a washout settlement pursuant to § 440.20(12)(b), Fla. Stat. (1983). The agreement released the employer and Johns Eastern from any further liability for medical and compensation benefits as a result of the July 18, 1983 accident.
The uncontroverted medical testimony establishes that the earlier injuries caused damage to the claimant's knee which predisposed him to have the July 18, 1983 injury and the resulting damage to his knee. Dr. Peterson testified that the claimant was "living on kind of borrowed time ... and he probably never would have had [the injury] in July of 1983 had he not had the underlying pathology" from the earlier accidents. However, the record also established that the claimant lost only one day from work as a result of the October 1980 accidents and during the three-year period before July 18, 1983 the claimant missed only a few days of work because of his injuries and received his full wages during that period of time. The record reflects that all medical bills for treatment prior to the July 18, 1983 accident have been paid. Claimant was working regularly prior to *504 the July 18, 1983 accident and was playing softball at the time of his July 18, 1983 injury. At the time of the subsequent accident and injury the claimant was able to work and did not require any medical treatment.
Although the July 18, 1983 accident might not have occurred if the claimant had not had the pre-existing condition resulting from the prior accident, any temporary disability benefits and remedial medical treatment occasioned by the 1983 accident are the responsibility of the carrier at the time of that second accident. See Hayward Trucking, Inc. v. Aetna Insurance Company, 445 So.2d 385 (Fla. 1st DCA 1984). There are several earlier cases that permitted the apportionment of medical benefits. See Neff v. Britto, 404 So.2d 416 (Fla. 1st DCA 1981); Bell Rentals and Sales v. Harvey, 405 So.2d 289 (Fla. 1st DCA 1981). However, all of these cases involved accidents that occurred prior to August 1, 1979, the effective date of a substantial amendment to § 440.15(5), Fla. Stat. Prior to the 1979 amendment, § 440.15(5) provided:
(5) SUBSEQUENT INJURY. 
(a) If any employee receives any injury for which compensation is payable while he is still receiving or entitled to receive compensation for a previous injury in the employ of the same employer, he shall not at the same time be entitled to compensation for both injuries, unless the latter injury be a permanent injury such as specified in this section; but he shall be entitled to compensation for that injury and from the time of that injury which will cover the longest period and the largest amount payable under this chapter.
(b) If any employee receives a permanent injury as specified in this section, after having previously sustained another permanent injury in the employ of the same employer, he shall be entitled to compensation for both injuries, but the total compensation shall be paid by extending the period and not by increasing the amount of weekly compensation. When the previous and subsequent injuries received in the same employment result in permanent total disability, compensation shall be payable for permanent total disability.
(c) The fact that an employee has suffered previous disability, impairment, or disease or received compensation therefor shall not preclude him from benefits for a later injury nor preclude benefits for death resulting therefrom; but in determining compensation for the later injury or death his average weekly wages shall be such sum as will represent his earning capacity at the time of the later injury. However, if an employee who has received compensation under this chapter for a previous permanent partial disability, impairment, or disease incurs a subsequent permanent partial disability from injury or occupational disease arising out of and in the course of his employment which merges with the preexisting permanent partial disability, impairment, or disease to cause a permanent partial disability that is greater than that which would have resulted from the subsequent injury or occupational disease alone, the compensation received for the previous permanent partial disability, impairment, or disease shall be deducted from the compensation payable for the subsequent permanent partial disability. However, in no event shall the compensation for the subsequent permanent partial disability be less than that allowed for the degree of disability that would have resulted from the subsequent injury or occupational disease if the previous disability had not existed.
In 1979, § 440.15(5) was completely rewritten to provide:
(5) SUBSEQUENT INJURY. 
(a) The fact that an employee has suffered previous disability, impairment, anomaly, or disease, or received compensation thereform, shall not preclude him from benefits for a subsequent injury nor preclude benefits for death resulting therefrom. Compensation for temporary disability, medical benefits, and *505 wage-loss benefits shall not be subject to apportionment.

(b) If a compensable permanent impairment, or any portion thereof, is a result of aggravation or acceleration of a preexisting condition, or is the result of merger with a preexisting impairment, an employee eligible to receive impairment benefits under paragraph (3)(a) shall receive such benefits for the total impairment found to result, excluding the degree of impairment existing at the time of the subject accident or injury or which would have existed by the time of the impairment rating without the intervention of the compensable accident or injury. The degree of permanent impairment attributable to the accident or injury shall be compensated in accordance with paragraph (3)(a). As used in this paragraph, "merger" means the combining of a preexisting permanent impairment with a subsequent compensable permanent impairment which, when the effects of both are considered together, result in a permanent impairment rating which is greater than the sum of the two permanent impairment ratings when each impairment is considered individually.
(c) If an employee receiving wage-loss benefits suffers a subsequent injury causing temporary disability, both wage-loss benefits and temporary disability benefits shall be payable during the duration of temporary disability; however, the total benefits payable shall not exceed the maximum compensation rate in effect for temporary disability at the time of the subsequent injury. Any reduction in benefits due to such limit shall be applied first to the wage-loss benefits payable as a result of the prior injury.
(d) If an employee receiving wage-loss benefits suffers a subsequent injury causing an additional compensable wage loss, benefits for each wage loss shall be payable; however, the total wage-loss benefits payable shall not exceed the maximum compensation rate in effect for permanent disability at the time of the subsequent injury. Any reduction in wage-loss benefits due to such limitation shall be applied first to the benefits payable as a result of the prior injury. (Emphasis supplied).
Although there was a provision for apportionment of permanent impairment in the pre-1979 law, there was no provision for or prohibition against apportionment of compensation for temporary disability and medical benefits. The 1979 amendment specifically prohibited apportionment of compensation for temporary disability and medical benefits resulting from a subsequent injury. Unlike Neff, Bell Rentals, and other cases allowing apportionment of medical benefits, in Hayward and in this case the compensable accidents occurred subsequent to August 1, 1979 and the 1979 law prohibiting apportionment of temporary disability and remedial medical benefits applies.
While 440.42(3) grants the deputy commissioner (deputy) jurisdiction to adjudicate controversies between carriers as to responsibility for payment of benefits, the deputy must follow the law in making his decision. If the clear and unambiguous language of § 440.15(5) (1979) is to be given any force and effect, the deputy is prohibited from apportioning any compensation for temporary disability or medical benefits payable after the subsequent accident.
The fact that the claimant has released the carrier responsible for the compensation and medical benefits claimed is not a basis for holding the carrier on the prior accidents liable for these benefits. If so, a claimant could receive a windfall by reaching a washout settlement with the carrier responsible for the workers' compensation benefits due as a result of a subsequent accident and proceed successfully against a carrier at the time of a prior compensable accident.
In view of the reversal of the benefits awarded, we also reverse the attorney's fee awarded. Reversed and remanded with instructions to dismiss the claim as to the *506 employer and the carrier Hewitt, Coleman & Associates, Inc.
BOOTH, J., concurs.
ERVIN, C.J., dissents.
ERVIN, Chief Judge, dissenting.
I respectfully dissent. The majority relies upon Hayward Trucking, Inc. v. Aetna Insurance Company, 445 So.2d 385 (Fla. 1st DCA 1984), in reversing the order on review. In my judgment, the court's holding in both Hayward and the case on review are inconsistent with opinions from this court and the Florida Supreme court on causation, and I believe them both to have been incorrectly decided. Hayward involved a claim by the employer/carrier (e/c) on the risk at the time of the employee's second accident for reimbursement, under the provisions of Section 440.42(3), Florida Statutes, from the first e/c for all benefits paid by it to the employee-claimant. The court reversed the deputy's allowance of reimbursement, holding that the second e/c was itself solely responsible for the payment of the employee's benefits. In so holding, Hayward apparently drew support from section 440.15(5), barring apportionment for temporary and medical benefits, in reaching its conclusion that until a claimant has obtained maximum medical improvement (MMI), and a permanency rating is achieved, no apportionment can be made between the two carriers as to their respective responsibilities. Regardless of whether the claimant in Hayward had been determined permanently disabled, the carrier on the risk at the time of the second injury was at the very minimum entitled to have the medical costs apportioned between it and the other carrier, assuming of course that the injuries combined to produce the temporary disability. See Neff v. Britto, 404 So.2d 416 (Fla. 1st DCA 1981); Bell Rentals and Sales v. Harvey, 405 So.2d 289 (Fla. 1st DCA 1981).
Unlike Hayward, the case at bar involved no issue of apportionment, for the simple reason that no permanent disability rating had been assigned the claimant, as required by section 440.15(5). The question by the deputy below was simply whether there was any causal connection between the initial injury and the subsequent, temporary disability and need for remedial treatment, and that issue having been decided, our task on review was to determine whether there was competent, substantial evidence supporting the deputy's conclusion.
What apparently motivated this court's decision in Hayward, as well as in the present case, in absolving the first carrier from liability, was the claimant's ability to resume work without difficulty and in continuing to do his work until the final incident occurred. We have held that apportionment should be denied in those instances in which an industrial accident occurs, causing disablement if, at the time of the injury, the preexisting condition was asymptomatic and non-disabling. See Sarasota County v. Reichert, 413 So.2d 163 (Fla. 1st DCA 1982); Barile Excavation and Pipeline Sewer Improvement v. Hough, 417 So.2d 843 (Fla. 1st DCA 1982). The mere fact, however, that a preexisting condition is non-disabling at the time of a later accident is not itself conclusive on the question of whether the final injury solely contributed to the causation of the resulting disablement. Cases involving apportionment clearly reveal the necessity of ascertaining whether a second injury occurred, independently causing disability.
A necessary pre-condition to any consideration of whether apportionment should be applied is to decide first whether there is a causal connection between the preexisting condition and the resulting disability. Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967). Thus, in cases in which apportionment is inapplicable, because, as here, no permanent disability is involved, the maxim requiring the employer to take the employee as he finds him remains valid  assuming that the last injury was caused by a new accident, which independently caused the final disability.
As we stated in U.S. Electric Co. v. Sisk Electric Service, Inc., 417 So.2d 738, 739 *507 (Fla. 1st DCA 1982): "The determinative factor in placing liability under Section 440.42(3) [the statute permitting apportionment of medical benefits between carriers], is whether the second compensable accident causes injury which is independent from or an exacerbation of that from the first compensable accident. Section 440.42(3) thereafter allows the deputy to divide liability according to each carrier's responsibilities." In Sisk, no apportionment of medical benefits was required because the court sustained the deputy's finding that the second injury was merely an exacerbation of the first, and therefore the first e/c on the risk was solely responsible for the payment of all benefits to claimant. Although Sisk  like Hayward  involved an insurer's claim for reimbursement against another insurer, pursuant to the provisions of section 440.42(3), and the present case involves a direct claim by an employee for temporary disability compensation and medical benefits, which are not subject to apportionment, section 440.15(5)(a), the same evidentiary rule of causation, announced in Sisk, applies also in the present case.
Professor Larson's treatise is of particular assistance in those situations wherein a worker suffers two or more episodes of disability with an intervening change of employers, or change of insurance carriers by the same employer. See 4 Larson Workmen's Compensation Law, § 95.00 (1984) [hereinafter: Larson]. He explains that there are three possible solutions to the successive carrier problem: to hold the first insurer liable, to place liability on the insurer on the risk at the time of the last injury, or to apportion the loss upon all. Id. at 17-109. The second solution, assigning liability to the carrier on the risk at the time of the last injury, has been termed the last injurious exposure rule. Id. at 17-112. It should be noted that Florida has by statute adopted that rule as to occupational disease cases only. See Section 440.151, Florida Statutes (1979).
In those states that apply the last injurious rule to accidental injury cases, as well as occupational disease cases, Larson notes that it is the characterization of the type of injury sustained that is most important. The characterization of the injury is also the determinative factor in cases involving apportionment issues; therefore the same causative principles applicable to cases involving the last injurious exposure rule are relevant also to cases involving apportionment issues. Thus, if the second injury is characterized as a recurrence of the earlier injury, rather than an aggravation or a new injury, and if the second incident does not contribute to the causation of the disablement, apportionment is inapplicable and the insurer on the risk at the time of the original injury remains liable for the second. Id. at 17-115, n. 20, 17-127. On the other hand, if the disability in question was caused by an aggravation amounting to a new injury, contributing independently apart from the prior injury to the final disability, the last carrier so exposed is solely liable, and apportionment is also inapplicable. See Miami International Hospital v. Summers, IRC Order 2-3358 (1978), wherein the e/c had urged that the claimant's second accident, for which it was on the risk, produced only short term effects, and that the subsequent surgery and disability were the result of an earlier accident. Rejecting this contention, the Industrial Relations Commission held that there was a sufficient evidentiary basis to uphold the order of the judge of the industrial claims, placing liability solely on the second carrier. The record there revealed that the treating physician had opined that the last accidental injury aggravated the previous condition and caused the treatment that followed. The reviewing body concluded, speaking through Commissioner Wentworth, that "[w]hen a causal relation is established there is, of course, no basis under the statute for apportionment of the medical and temporary disability benefits awarded... ." (e.s.)
To conclude, cases involving both apportionment and the last injurious exposure rule require that there be a second injury contributing to the causation of the disability before the question of which carrier is *508 liable even arises. Larson, pp. 17-127 and 17-193. Once there is evidence revealing the existence of a second injury which contributes to permanent disability, apportionment between two carriers is proper if both injuries combine to produce the final disability. Larson at 17-181. And see Mandel v. Pratt, 117 So.2d 413 (Fla. 1960).
In my opinion, the evidence in the case at bar sustains the deputy's finding that the incident which occurred in July of 1983 was merely a recurrence of the prior injuries sustained in 1980, and not a new injury independently contributing to claimant's disablement. Dr. Peterson stated that claimant's knee probably never would have given way in July, 1983, if he had not had the underlying pathology; that he was predisposed to the injury "100%", and that claimant was "living on ... borrowed time and probably never would have had the injury of 1983 had he not had the underlying pathology."
The majority's opinion suggests that the rule permitting apportionment of medical benefits is no longer applicable after the 1979 amendment to Section 440.15(5), Florida Statutes. The majority, however, apparently overlooks the continuing effect of Section 440.42(3), Florida Statutes (first added by chapter 57-225, § 3, Laws of Florida), which is still extant, and provides generally that in the event of a controversy between two or more carriers as to their obligations with respect to a claim for compensation or other benefits, the deputy commissioner shall have jurisdiction to determine the controversy. Although it is true, as stated by the majority, that the accident which occurred in Neff v. Britto was governed by the pre-1979 law, in my judgment the result would be the same if the accident had occurred following the 1979 amendments, in that section 440.42(3), Florida Statutes, was unaffected by the amendments. The distinction between a dispute involving two carriers' responsibilities to pay a claim for medical benefits, authorized by section 440.42(3), and a dispute between a claimant and one e/c for benefits was carefully explained by this court in Neff v. Britto, 404 So.2d at 417, as follows:
Contrary to appellants' arguments, Section 440.02(18) [which, until its amendment in 1979, precluded apportionment of temporary benefits and medical costs] is not applicable to the present case. This statute governs disputes between a claimant and a single employer/carrier and does not apply to disputes between multiple employer/carriers. Seasons from Sarasota v. O'Day, 379 So.2d 1024 (Fla. 1st DCA 1980). Here, the dispute is between two employer/carriers as to each one's responsibility for payment of claimant's medical treatment of his psychiatric condition and Section 440.42(3), Florida Statutes (1977), is the relevant statute. Under Section 440.42(3), the deputy commissioner is empowered to apportion the medical benefits awarded between the employer/carriers according to each one's responsibility. Rowe and Mitchell v. Rodgers, 378 So.2d 1281 (Fla. 1st DCA 1980).
The language now found in Section 440.15(5), Florida Statutes, forbidding apportionment of medical and temporary benefits as to claims filed by a worker against an e/c, was included until the 1979 revision, under Section 440.02(18), Florida Statutes (1977), defining accident. This provision was first added to then section 440.02(19) by chapter 65-184, § 1, Laws of Florida. Before the 1965 amendment, the court had construed section 440.02(19) as permitting apportionment of medical and temporary benefits. Shores Development, Inc. v. Carver, 164 So.2d 803 (Fla. 1964). In 1979, the apportionment bar to such benefits was transferred to section 440.15(5). Thus, for nearly twenty years there has existed no authority to apportion medical or temporary benefits in a claim involving only an injured worker and an e/c. See also Russell House Movers, Inc. v. Nolin, 210 So.2d 859 (Fla. 1968). Certainly the transfer of the apportionship bar from section 440.02(18) to section 440.15(5)(a) in 1979 had no more effect on section 440.42(3), permitting apportionment between carriers, than had the preclusion provision before 1979. Indeed, *509 the transfer to section 440.15, providing generally the types of disability-compensation available to injured workers, serves to clarify the legislative intent that the bar affects only claims between the claimant and an e/c, and not disputes between multiple carriers.
U.S. Electric Co. v. Sisk recognized, even after the 1979 amendments, that apportionment of medical benefits under section 440.42(3) may be permitted in a proper case. From my review of the record in Sisk,[1] I find that the employee was first injured on April 2, 1979, and later on September 13, 1979. Although the court sustained the deputy's finding that the second injury was not the result of a new accident, but rather an exacerbation of the former, it observed that if a new injury had occurred, "[s]ection 440.42(3) ... allows the deputy to divide liability according to each carrier's responsibility." 417 So.2d at 739 (e.s.).
The point of my disagreement with the majority is not that the deputy in the instant case could apportion medical and temporary benefits between the two carriers  clearly he is prohibited from doing so by section 440.15(5)  rather that the majority's application of the principles stated in Hayward Trucking, Inc. v. Aetna Insurance Company to the case at bar is misplaced, because that case involved a claim for reimbursement by one carrier against another, and as such, was controlled by the provisions of section 440.42(3), which, as stated, permits, in a proper case, apportionment of medical benefits paid.
In the case on review, section 440.15(5) applies, so no issue of apportionment is involved. The only question before us is whether there exists competent and substantial evidence supporting the deputy's determination. And the questions confronting the deputy in turn were those directed to the issue of causation, asking: (1) Was the second injury such as to constitute a new injury, thereby placing responsibility for all benefits claimed on the second carrier, or (2) was the later injury simply a recurrence of the former, thereby making the first carrier solely responsible? In my judgment, the deputy on competent and substantial evidence made the latter finding, and I would not disturb it now on appeal.
Although I would affirm the award, I would also direct the deputy to deduct from the amount of benefits awarded the lump sum agreed upon between claimant and the later carrier as settlement for all injuries suffered, which, by agreement, were related solely to the incident of July 18, 1983. It was of course later determined by the deputy that none of the later injuries were caused by the July 1983 incident, but instead related only to the first, as a recurrence of the former.
In my view the washout agreement should be deemed a gratuity, insofar as the rights of the second carrier are concerned. Compensation received for temporary disability pursuant to a settlement agreement is not subject to a deduction. Parks v. Dade County Waste Division, 402 So.2d 563 (Fla. 1st DCA 1981). Nevertheless, I see no reason why the first carrier, not a party to the agreement, should be barred from receiving a credit, caused by the amount claimant received by stipulation, against future compensation and medical benefits, which it was directed below to pay. Our opinions have recognized that an overpayment may be applied as a credit against compensation ultimately found to be due, even though such compensation is of another class, if a reasonable basis exists for such overpayment. Belam Florida Corporation v. Dardy, 397 So.2d 756 (Fla. 1st DCA 1981); State of Florida, Division of Family Services v. Varela, 418 So.2d 1182 (Fla. 1st DCA 1982). Clearly a reasonable basis for the overpayment existed, in that at the time of the agreement, claimant's final disability had not yet been solely attributed to the earlier accidents.
*510 I recognize that the instant cause involves no issue of whether a credit should be allowed against a different class of disability benefits, as was the situation involved in the above cited cases. Instead, the credit in my opinion should be applied to the same compensation class, temporary total benefits only; yet I know of no reason why such credit could not be allowed to the same category of compensation. It has long been recognized that the employer is entitled to recoup by way of credit advance payments previously made from the same class of compensation benefits remaining unpaid. Daoud v. Matz, 73 So.2d 51 (Fla. 1954). This rule remains unaffected by Belam and its later progeny.
I would therefore affirm the award entered, but remand the case to the deputy with directions for him to credit from future sums owed to claimant, the amount paid to him pursuant to the agreement.
NOTES
[1] While the Sisk opinion did not report the dates of the accidents involved, the court is permitted to take judicial notice of its own records. Department of Legal Affairs v. District Court of Appeal, 5th District, 434 So.2d 310, 313 (Fla. 1983).