509 So.2d 1185 (1987)
ATKINS CONSTRUCTION CO. and South-Eastern Fire Insurance Co., Appellants/Cross-Appellees,
v.
Fred Earl WILSON, Appellee/Cross-Appellant,
v.
HENDRY CORRECTIONAL INSTITUTE and Division of Risk Management, Appellees/Cross-Appellees.
No. BL-359.
District Court of Appeal of Florida, First District.
June 26, 1987.
Rehearing Denied August 6, 1987.
*1186 Gerald W. Pierce, of Henderson, Franklin, Starnes & Holt, Ft. Myers, for appellants/cross-appellees.
Bruce L. Scheiner and Brian O. Sutter, of Bruce L. Scheiner & Associates, Ft. Myers, and Bill McCabe, of Shepard, McCabe & Cooley, Orlando, for appellee/cross-appellant.
Kurt Preston Hampp, of Hampp & Schneikart, St. Petersburg, for appellees/cross-appellees.
ZEHMER, Judge.
Atkins Construction Co. appeals an order of the deputy commissioner granting Fred Earl Wilson, a former employee, wage-loss and medical benefits. Wilson cross appeals the order insofar as it denies him benefits from Atkins and his subsequent employer, Hendry Correctional Institute.
Claimant first injured his back on September 9, 1981, in the course of his employment with Atkins. Claimant's treating physician, Dr. Hussey, diagnosed the injury as lumbosacral strain with facet syndrome, complicated by a previously undiagnosed diabetic condition. Atkins paid claimant temporary disability and medical benefits for this injury. Claimant reached maximum medical improvement in February 1982 with a ten percent permanent impairment rating and restrictions on prolonged walking and heavy lifting.
After being told he could return to work, claimant worked for a time as a gas station manager. In March 1984 claimant went to work as a prison guard for Hendry Correctional Institute. Claimant continued to have problems with his back while he was working at Hendry. He underwent several facet blocks intended to give him temporary relief, and one facet rhizotomy intended to permanently relieve his back pain. He missed several days of work because of his back problem, and sometimes took medication for pain.
On October 27, 1984, claimant fell down three stairs at Hendry and landed on his back. He was treated at the prison infirmary and then at the emergency room of a local hospital. On November 5, claimant consulted Dr. Hussey about this injury, and Dr. Hussey rated claimant as temporarily totally disabled. In an attempt to alleviate claimant's worsened condition, Dr. Hussey gave claimant another facet block on November 13.
Two days later, November 15, 1984, claimant was involved in an automobile accident while traveling to the hospital for treatment of a medical problem unrelated to his employment. He was a passenger in a car which, while stopped at a stop light, was struck from behind by another car. Claimant remained in the hospital for nine days after this accident, suffering primarily from back pain although he also underwent surgery for his unrelated medical condition. Claimant saw Dr. Hussey on December 10. Dr. Hussey testified that the only difference between claimant's November 5 exam and his December 10 exam was a positive straight leg test, which he characterized as unimportant and probably transient. Dr. Hussey continued to treat claimant until July 15, 1985, when he determined claimant had reached maximum medical improvement with an additional one percent permanent impairment, leaving claimant with an overall eleven percent impairment rating.
*1187 Although Dr. Hussey did not testify at the hearing, his deposition was received into evidence. No other doctor gave evidence. Dr. Hussey repeatedly stated that all three accidents contributed to claimant's condition. He felt, however, that between the second and third accidents, the one at Hendry was the more serious and contributed the most to claimant's increased disability. Dr. Hussey also stated that the additional one percent impairment rating does not, based on American Medical Association guidelines, sufficiently reflect claimant's additional disability because it does not take into account his increased pain and the variability of his condition. According to Dr. Hussey, claimant is now unable to do the sort of work entailed in his former job at Hendry.
The deputy ordered Atkins to pay permanent wage-loss benefits to claimant after July 15, 1985, the date of maximum medical improvement. He found, however, that claimant had demonstrated an earning capacity during the time he worked at Hendry and found that "[t]o the extent that Atkins and its carrier are obliged to provide wage loss benefits ... they would have the benefit of that deemed or demonstrated earning capacity." The deputy denied both the claim for temporary total disability benefits and the claim for medical benefits between the date of the car accident and the date of maximum medical improvement. The order based these denials on findings that the greater part of claimant's additional disability arose from the noncompensable car accident, rather than the compensable fall at Hendry:
A careful reading of the Deposition testimony of Dr. Hussey suggests that the Claimant's symptoms and complaints after the automobile accident were substantially and materially worse and required more extensive treatment and a greater period of disability than would otherwise have been the case. I find that this conclusion comports with logic and reason; however, I note that Dr. Hussey's opinions are obscure at best. Nevertheless, the Claimant had new symptoms and complaints and required different treatment than he was receiving before.
The deputy awarded medical benefits from Hendry for the period between the accident at Hendry and the car accident, and awarded any future medical benefits for palliative care from Atkins. The deputy's order further states:
I reached the conclusion from Dr. Hussey's testimony that the Claimant did not incur additional permanent disability from the accident at Hendry Correctional Institute. I find that any additional disability came from the unrelated automobile accident and that the fall at Hendry Correctional Institute was a temporary aggravation or exacerbation of his preexisting condition with Atkins.
On appeal Atkins argues that there was no competent, substantial evidence to support this determination and the conclusion that Atkins should be responsible for all of claimant's future palliative care. On cross appeal, claimant argues a lack of competent, substantial evidence to support the deputy's determination (1) that claimant's disability between the date of the car accident and the date of maximum medical improvement was due entirely to the car accident, (2) that claimant did not incur any additional impairment from his fall at Hendry, and (3) that Hendry is not liable to claimant for wage-loss benefits because the fall at Hendry was merely a temporary exacerbation of his previous injury. Claimant also questions the determination that he had a deemed earning capacity following his employment at Hendry and that his wage loss benefits from Atkins could therefore be reduced by the amount of this deemed earning capacity.
Where a compensable injury is followed by another compensable injury, and merger is inapplicable, the claimant's compensation should be apportioned between the carriers based on the extent to which each accident contributed to the claimant's disability and need for medical care. § 440.42(3), Fla. Stat. (1985); Flagship National Bank of Broward County v. Hinkle, 479 So.2d 828 (Fla. 1st DCA 1985). Where a compensable injury is followed *1188 by a noncompensable injury after maximum medical improvement, it is necessary to apportion or "carve out" the effect of the noncompensable injury and award benefits based only on the compensable injury. See Newhouse v. Volusia County School Board, 474 So.2d 1222 (Fla. 1st DCA 1985).[1] This case presents both situations. We conclude that the record lacks competent, substantial evidence to support the deputy's apportionment of claimant's disability entirely to the Atkins injury and the car accident.
Dr. Hussey gave the only medical evidence in the record. He treated claimant after all three accidents. Dr. Hussey testified that claimant's current disability is attributable to a combination of all three accidents and his underlying diabetic condition, but that claimant's disability was substantially worsened by the second and third accidents. Of these two, the fall at Hendry was the most severe. The automobile accident aggravated the problem, but did not contribute to claimant's additional disability as much as the fall at Hendry. Dr. Hussey declined to attempt to apportion the damage between the two accidents, except to state that the automobile accident was not as severe as the fall. No other medical evidence was presented to dispute Dr. Hussey's testimony.
The deputy essentially found that all of claimant's additional disability after the Hendry accident was attributable to the noncompensable automobile accident. We find no evidence in the record to support this finding. In light of Dr. Hussey's testimony, it is clear that claimant's Hendry accident caused more than half his additional disability and that the deputy's apportionment of claimant's disability between the three accidents, especially the failure to attribute causality to the Hendry accident, cannot be upheld.
The deputy stated, both on the record and in his order, that he found Dr. Hussey's deposition unclear. Our reading of the deposition does not reveal a lack of clarity. When asked whether the automobile accident contributed to claimant's current condition, Dr. Hussey always stated that it did. When asked to compare the automobile accident with the fall at Hendry, however, he invariably answered that the fall at Hendry was the more severe of the two accidents. Dr. Hussey's testimony was supported by his office notes and is consistent with claimant's testimony.
The deputy also found that claimant had a "deemed or demonstrated earning capacity" due to his employment at Hendry. It seems to us that the deputy used the deemed earnings concept as a method to apportion claimant's wage loss between Atkins and the noncompensable automobile accident. The parties, however, are unable to agree on what is meant by this portion of the deputy's order. In any case, the deemed earnings provision of section 440.15(3)(b)2, Florida Statutes (1985), is not applicable unless the deputy finds that claimant voluntarily limited his income or failed to accept employment commensurate with his abilities. § 440.15(3)(b)2, Fla. Stat. (1985). The deputy made no such finding in this case, and there is no evidence in the record to support the application of the deemed earnings provision.
The appealed order is reversed and remanded for further proceedings consistent herewith. On remand, the deputy should determine the extent to which the fall at Hendry contributed to claimant's additional disability over that attributable to the Atkins accident and accordingly apportion the benefits due claimant. If necessary the deputy may hear additional evidence on this issue.
REVERSED and REMANDED.
ERVIN and SHIVERS, JJ., concur.
NOTES
[1] Of course medical expenses attributable solely to the noncompensable injuries are not the responsibility of the employer. State, Department of Public Health v. Wilcox, 483 So.2d 21 (Fla. 1st DCA 1986).