ERVIN, Judge,
dissenting.
I respectfully dissent. If this case involved only the issue of whether there was sufficient medical evidence to support the judge’s determination that the September 29, 1986 industrial accident caused merely a temporary aggravation of the claimant’s preexisting back condition, I would have no difficulty in affirming. The issue before us, however, involves far more. The case turns on the legal effect of other evidence which indicates that the claimant had completely recovered from both his 1971 and 1981 injuries, in that in 1986 he worked with a construction company performing manual tasks without apparent difficulty for approximately one month and was terminated for reasons unrelated to his preexisting condition; and he resumed work in September 1986 with his former employer and four days thereafter suffered his final injury. Because the judge’s order did not address what effect, if any, the evidence relating to claimant’s employment activities following his 1981 injury may have had in his assessment that claimant’s 1986 injury was merely a recurrence of the former injury, I would remand the case to the judge with directions that he clarify his findings in that regard.
I think the rule is reasonably clear, notwithstanding the existence of medical testimony suggesting that an employee’s injury amounts to nothing more than a re-injury or recurrence of an earlier injury, that an employee who, at the time of a later injury, had been suffering from a prior condition which did not disable him from carrying out gainful employment, may nonetheless recover workers’ compensation benefits caused by a subsequent, compensable industrial injury from the carrier then at risk. Sunland Center at Miami v. Rudolph, 521 So.2d 132, 134 (Fla. 1st DCA 1988); Vanguard Pest Control v. Turner, 501 So.2d 66, 67 (Fla. 1st DCA 1987); Escambia County Council on Aging v. Goldsmith, 500 So.2d 626, 635 (Fla. 1st DCA 1986); Miami-Dade Water & Sewer Auth. v. Leech, 447 So.2d 979, 981 (Fla. 1st DCA 1984); Hayward Trucking, Inc. v. Aetna Ins. Co., 445 So.2d 385, 386-87 (Fla. 1st DCA 1984); Barile Excavation & Pipeline Sewer Improvement v. Hough, 417 So.2d 843, 844 (Fla. 1st DCA 1982); Sarasota County v. Reichert, 413 So.2d 163, 163 (Fla. 1st DCA 1982); Caruso v. Crown Liquors, Inc., 379 So.2d 1317, 1318 (Fla. 1st DCA 1980).
*815 Although the above rule is most frequently applied to preclude the apportionment of permanent benefits in disputes between claimants and employers/carriers (E/Cs), it has also been applied to preclude the placement of liability on the first carrier for the payment of medical expenses and temporary compensation benefits between claimants and e/cs, e.g., Miami-Dade Water & Sewer Authority; Structural Systems, Inc. v. Worthen, 463 So.2d 502 (Fla. 1st DCA 1985), disavowed on other grounds, City of Fernandina Beach v. School Bd. of Nassau County, 488 So.2d 871 (Fla. 1st DCA 1986), and to preclude, in cases involving successive injuries with different carriers at risk, a division of liability between the carriers, pursuant to Section 440.42(3), Florida Statutes. See, Hayward Trucking, Inc.
Thus, the carrier providing coverage at the time of the final accident may be held solely liable on evidence showing that following an earlier injury, an employee was able to return to work and carry out the same general duties he or she had performed before the prior injury. The facts in Structural Systems, Inc. are particularly instructive. There the employee suffered three industrial accidents, two in 1980 and the third in 1983. Similar to the claimant at bar,[2] Worthen entered into a washout settlement of his claim; however, unlike the facts at bar, the settlement related to the claim arising from the final accident. Notwithstanding medical testimony, on which the deputy relied, stating that claimant would not have suffered the 1983 accident if he had not had the underlying pathology stemming from the earlier accidents, and that he was predisposed to the final injury “100%,” the majority reversed the deputy’s order which had held the carrier at risk at the time of the earlier accidents solely liable for temporary total disability (TTD) benefits and past and future remedial medical treatment resulting from the 1983 injury. In its decision the majority observed that the claimant had lost only a few days’ work following his earlier accidents; that all medical bills for treatment therefor had been paid, and significantly: “At the time of the subsequent accident and injury the claimant was able to work and did not require any medical treatment.” Structural Sys., Inc., 463 So.2d at 504. The court thereupon concluded that were it not for the washout settlement with the subsequent carrier, any TTD and remedial medical benefits would be solely its responsibility.[3]
In the case at bar, although claimant was unable to work for a substantial amount of time between his 1981 and 1986 injuries, nonetheless, in June 1986, during his employment with Williams Construction Company doing painting and sanding, claimant’s job activities included climbing, lifting, and using a hand grinder, which he performed without apparent difficulty while working twelve hours a day, seven days a week. This evidence furnishes strong support for the conclusion that the claimant was not experiencing any disability caused by the earlier injury at the time of the final accident, as well as the conclusion that claimant was not then suffering from any disability attributable to the preexisting condition which was independent of the aggravating effect of the subsequent accident. If neither circumstance exists, any resulting liability for compensation and medical benefits should be solely the responsibility of the carrier having cov *816 erage at the time of the subsequent accident. Evans v. Florida Indus. Comm’n, 196 So.2d 748 (Fla.1967).
In my opinion, the judge below and the majority have incorrectly focused solely upon medical evidence in concluding that the employee suffered only a recurrence of his earlier injury, whereas their inquiry should have been whether claimant remained disabled at the time of the subsequent injury. Because disability is defined as an “incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of injury,” Section 440.02(9), Florida Statutes, the judge should have taken into consideration other factors, including the claimant’s capacity at the time of the later accident to engage in gainful employment. Escambia County Council on Aging v. Goldsmith, 500 So.2d 626, 635 (Fla. 1st DCA 1986).
Because the judge appears to have relied entirely on medical testimony in reaching his decision, I consider that critical evidence in the record was either overlooked or ignored. Cf. Allied Parcel Delivery v. Dixon, 466 So.2d 439 (Fla. 1st DCA 1985); Poorman v. Muncy & Bartle Painting, 433 So.2d 1371 (Fla. 1st DCA 1983). In my judgment the case should be remanded to the judge for him to determine, after considering claimant’s employment history following his 1981 injury, whether appellant was capable of engaging in gainful employment at the time he suffered his 1986 injury-
If the judge concludes that claimant did have such capacity and was therefore not disabled, he should next consider whether claimant has as yet reached maximum medical improvement (MMI), and, if so, whether his condition is such as to entitle him to permanent compensation benefits. If claimant has not yet reached MMI, his entitlement to temporary compensation and medical benefits should then be established. The responsibility for payment of same under either circumstance should be placed solely on Liberty Mutual Insurance Company (carrier number two).
If, on the other hand, the judge determines from all of the evidence that claimant’s disability from the prior injury continued at the time of his 1986 injury, he should then decide whether the two injuries combined to produce an overall greater disability than that preexisting the 1986 injury. Due to the washout agreement with carrier number one, such carrier would be absolved from any legal responsibility for additional compensation benefits. But its responsibility for the payment of future medical benefits may be affected by a proper allocation, if this issue can be resolved. Additionally, if claimant on remand is determined to have achieved MMI, with, as stated, a greater disability by reason of the second accident, carrier number two’s responsibility for payment of compensation benefits, by applying the Evans principles of apportionment, should, if possible, be ascertained. It should be noted that section 440.42(3) authorizes a judge to allocate responsibility and order reimbursement between multiple carriers, and that allocation should be based on the extent to which each accident contributes to any resulting disability or need for medical care. Atkins Constr. Co. v. Wilson, 509 So.2d 1185 (Fla. 1st DCA 1987).

. In the case below, the evidence reflects that a judge of compensation claims approved, before claimant's final injury, a settlement agreement in which claimant had agreed, in exchange for the receipt of $60,000 in lump-sum compensation benefits, to release Aetna Life and Casualty (carrier number one) from any further liability for future payment of compensation benefits resulting from his 1981 injury. Based upon this agreement, the judge in the case at bar, in finding that claimant’s 1986 injury was only a recurrence of his 1981 injury, determined that claimant was not entitled to any additional compensation benefits.

. As earlier indicated, the majority's opinion in Structural Systems, Inc., was subsequently disavowed in part on other grounds. The disavowal related to certain dicta in the majority's opinion, unnecessary to the holding, which indicated that Section 440.15(5), Florida Statutes (1979), bars apportionment of TTD and medical benefits between two carriers. City of Fernandina Beach v. School Bd. of Nassau County, 488 So.2d 871, 872 (Fla. 1st DCA 1986).