609 So.2d 1342 (1992)
PUBLIX SUPERMARKET, INC., et al., Appellants,
v.
Harry HART, Appellee.
No. 91-2088.
District Court of Appeal of Florida, First District.
December 7, 1992.
*1343 Mark L. Zientz, Williams & Zientz, Miami, for appellants.
Joseph Hackney, Jr. P.A., Miami, for appellee.
PER CURIAM.
In this worker's compensation case, the self-insured employer, Publix Supermarkets, appeals the order of the judge of compensation claims (JCC) finding claimant entitled to temporary partial disability (TPD) benefits from October 25, 1984, to February 4, 1985,[1] based upon the excusal of the good faith job search requirement, awarding wage loss from February 5, 1985 through May 4, 1988,[2] conditioned upon submission of wage loss forms, awarding penalties, interest, costs and attorney's fees, and awarding payment for the medical services of Dr. Suarez.
On appeal, the employer argues that the JCC erred in awarding TPD benefits, wage *1344 loss, payment for the services of Dr. Suarez, and in awarding penalties, interest, costs and attorney's fees. We reverse the award of payment for the services of Dr. Suarez, vacate the order with respect to the other issues raised, and remand to the JCC for further consideration in light of our opinion.
Appellee/claimant, Harry Hart, was employed as a frozen food selector at a Publix warehouse. Appellant had been employed by Publix for approximately five to six months, when on July 21, 1983, he slipped while lifting bags of ice, twisting his back. Claimant was referred to Dr. Krestow who kept him out of work for some eighteen weeks, during which time claimant received compensation benefits. Claimant testified that upon returning to work he was unable to keep up with the work load because his back was still bothering him. Because of this, the employer transferred claimant to a day job which involved driving a machine. Claimant, who had been earning $10.00 per hour in his former position, would earn only $7.50 in his new day job.
In October, 1984, an incident occurred which precipitated claimant's termination by the employer. As recounted by claimant:
They had had pallets of turkeys. Each pallet had twenty cases of turkeys on it, and they had them stacked about six pallets and several rows of them, and they all fell over, and they gave me the chore of going in there and picking them up. I told them that due to the fact that they had moved me from a $10.00 an hour job at night and they were going to move me to $7.00 per hour in the day-time, they would still want me to do the kind of stuff I was doing at night, I told them I didn't think it was right. So he told me to punch out and go home.
The record in this case presents conflicting evidence susceptible to the differing interpretations that claimant was terminated either because of impaired performance as a result of his back injury, or because of insubordination. In addition, with respect to claimant's subsequent job search efforts, testimony was presented from which it may be inferred that claimant voluntarily limited his income by overemphasizing his back injury and physical limitations to prospective employers.
This evidence adduced at the hearing is relevant to our review because the employer defended against the claim by asserting that claimant voluntarily limited his income. Although the JCC's order acknowledges the employer's assertion of a voluntary limitation of income defense, the JCC did not expressly rule on this defense, but only referenced in passing that "claimant's work performance was less than acceptable to the self-insured employer." Having failed to rule on the employer's defense, the JCC predicated the award of TPD benefits for the period October 25, 1984 through February 4, 1985 on the excusal of the usual good faith work search obligation because of the employer's actual knowledge of the work restrictions placed on claimant by Dr. Yates on October 25, 1984, and failure to inform claimant that he might qualify for TPD benefits.
This case must be remanded in order that the JCC may make a specific determination on the question whether the claimant voluntarily limited his income. This is so because the mere excusal of the work search requirement is not sufficient to establish the causal relationship between the change in employment status and the compensable injury. In asserting a claim for benefits, the initial burden is on the claimant to demonstrate an entitlement to benefits upon a change in employment status due to a compensable injury. § 440.15(3)(b)2, Fla. Stat.; Edwards v. Caulfield, 560 So.2d 364 (Fla. 1st DCA 1990). Depending upon the circumstances, this burden may be satisfied by proof which encompasses medical evidence or evidence of a good faith work search. Meek v. Layne-Western Co., 566 So.2d 31 (Fla. 1st DCA 1990). Once the claimant has satisfied the initial burden, the burden of proof shifts to the employer/carrier to demonstrate a voluntary limitation of income or to demonstrate that the injury is not creating an impairment or work-related physical restriction which would limit the claimant's *1345 ability to perform appropriate employment. § 440.15(3)(b), Fla. Stat. As was recently stated:
While there are many instances in which a claimant has been excused from any work search obligation and compensation has been awarded after an employer/carrier failed to inform the claimant of a work search responsibility, such an award is appropriate only if the circumstances (which should be considered as if an adequate work search had been performed) are sufficient to satisfy the claimant's burden of proof. Excusing a claimant from the work search responsibility does not absolutely discharge this initial burden, and does not permit a compensation award unless the circumstances demonstrate the necessary causal relation and change in employment status.
Nickolls v. University of Florida, 606 So.2d 410 (Fla. 1st DCA 1992) (Allen, J., concurring).
In the present case, if the JCC were to conclude that claimant was terminated from his position with Publix for insubordination, claimant will have failed to satisfy his burden of showing that his change in employment status was due to his compensable injury. In such a case, but for claimant's insubordination, claimant would have maintained his employment with Publix, and the excusal of the work search requirement would be insufficient to establish a causal relationship between claimant's change in employment status and the industrial injury. See Burger King v. Nicholas, 580 So.2d 656 (Fla. 1st DCA 1991).
We further note that if on remand the JCC determines that claimant voluntarily limited his income through insubordination or otherwise, such would not necessarily foreclose the JCC's award of wage loss benefits which was contingent upon the submission of wage loss forms. See Bado v. Canteen Corp., 513 So.2d 1364 (Fla. 1st DCA 1987) (finding that refusal to accept a job constituted voluntary limitation of income, but did not perpetually foreclose claimant's entitlement to wage loss benefits); Mathis v. Lewis Bear Co., 511 So.2d 663 (Fla. 1st DCA 1987) (finding that although claimant had quit her job, wage loss benefits were not precluded in light of claimant's subsequent good faith job search and claimant's reapplication for a position with her former employer); Western Union Telegraph Co. v. Perri, 508 So.2d 765 (Fla. 1st DCA 1987) (finding that although claimant was fired for insubordination, JCC properly denied wage loss benefits only for the period prior to claimant's good faith effort to return to work); Johnston v. Super Food Services, 461 So.2d 169 (Fla. 1st DCA 1984) (finding that claimant's discharge for excessive absenteeism and tardiness did not automatically foreclose award of wage loss benefits). Where wage loss benefits may be awarded despite a finding of voluntary limitation of income, the entitlement to wage loss benefits must be determined on a month-to-month basis. Mathis, 511 So.2d at 664. This same rule would apply to a claim for TPD benefits. See § 440.15(4)(b), Fla. Stat. Therefore, on remand, the JCC should reconsider claimant's TPD and wage loss claims on a monthly basis in light of the employer's voluntary limitation of income defense, consistent with the above cited authority.
With respect to the JCC's award of benefits for the services of Dr. Suarez, we find such an award erroneous as a matter of law. Claimant's condition was evaluated by Dr. Yates on February 4, 1985, who determined that claimant had attained maximum medical improvement without permanent impairment[3] and without need for further care. Claimant later elected, without having been authorized to do so, to obtain a second opinion from Dr. Suarez who agreed that no further treatment was indicated, but opined that claimant suffered a 10% permanent impairment, based upon claimant's subjective response to range of motion tests. Although the JCC could *1346 properly consider the testimony of Dr. Suarez with respect to the factual dispute as to the question of permanent impairment, claimant is not entitled to be compensated for the cost of the services of Dr. Suarez unless such was reasonably required by the nature of the injury or the process of recovery, Amoco Container Co. v. Singh, 418 So.2d 395 (Fla. 1st DCA 1982), and that the need for such services was required and the employer still failed to provide such services. § 440.13(2)(a) and (d), Fla. Stat. (1991). In the present case, in light of the substantially similar opinions of Dr. Yates and Dr. Suarez, it cannot be said that the services of Dr. Suarez were reasonably required and that the e/c should therefore be required to bear such expense. Both physicians opined that claimant was in no need of further treatment, and the differing opinions on the question of permanent impairment were based only upon claimant's subjective response to range of motion tests. The mere fact that Dr. Suarez disagreed with Dr. Yates on the question of permanent impairment does not itself establish that evaluation by Dr. Suarez was reasonably required. Therefore, the JCC's award for payment of the evaluation of Dr. Suarez must be reversed.
REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
MINER, J., concurs.
WEBSTER, J., concurs in result only.
ERVIN, J., concurs and dissents with written opinion.
ERVIN, Judge, concurring in part and dissenting in part.
I concur with the majority in reversing the award of payment for the services of Dr. Suarez, but would otherwise affirm the remainder of the awards. Under the circumstances, I see no need to remand the case to the judge of compensation claims (JCC) for further consideration of the award of temporary partial disability (TPD) benefits from October 25, 1984 through February 4, 1985, in order for the judge to make a determination whether the claimant voluntarily limited his income. The majority has acknowledged that there was conflicting evidence on the question of whether claimant was terminated from his employment based upon his impaired performance due to his back injury or insubordination, and that the evidence showed that claimant was not informed of his responsibility to conduct a work search during the period of time that TPD benefits were awarded. Inconsistently, however, the majority states on the one hand that if the JCC concludes on remand that claimant was terminated from his position for insubordination, claimant will not have satisfied his burden of showing that his change of employment status was due to his compensable injury, but then on the other hand states that claimant may nevertheless be entitled to an award of wage-loss (WL) benefits. In my judgment, based on the status of the record before us, remand for the JCC to determine the reason for termination is entirely unnecessary.
The judge found that because "claimant's work performance was less than acceptable to the self-insured employer after his accident, they should have informed him of his rights." I regard this as an implicit finding that a causal relationship existed between claimant's compensable injury and the change in his employment.
Even if the statement does not constitute such a finding, I still do not consider remand necessary to resolve such issue. This court has repeatedly held that performance of a good-faith work search is sufficient to establish entitlement to WL benefits after a claimant has been terminated for refusing to take an offered job, has quit because of dissatisfaction with a work schedule, or was fired for absenteeism or tardiness, etc. See Bado v. Canteen Corp., 513 So.2d 1364 (Fla. 1st DCA 1987), and cases cited therein. If a work search is necessary to establish entitlement to WL benefits even if the claimant was fired for insubordination, then the employer clearly had the concomitant duty to inform claimant of the work search obligation. Because the JCC had already concluded that the employer failed to satisfy its obligation, *1347 remand is not required, because in either case (termination for insubordination or termination for impaired job performance related to the back injury) claimant is entitled to WL benefits until he became aware of the work-search requirement.
To conclude, I would affirm all portions of the judge's order except that directing the employer to pay Dr. Suarez's medical bill, and concur with the majority in reversing as to it.
NOTES
[1] Excepting five weeks in January with earnings of $62.50 per week.
[2] Excepting sixteen days in April, 1987, when claimant was incarcerated.
[3] Specifically, Dr. Yates opined that claimant probably had a 3% to 4% disability of the back because of the lumbosacral sprain, but since there was no limitation of motion and no neurologic deficit, such does not constitute a permanent impairment under the American Medical Association guidelines. Dr. Yates did, however, impose minor work restrictions on claimant.