623 So.2d 804 (1993)
CUSTOM ARCHITECTURAL METALS, et al., Appellants/Cross Appellees,
v.
Vernon Keith BRADSHAW, Appellee/Cross Appellant, and
Wal-Mart Stores, et al., Appellees.
No. 92-603.
District Court of Appeal of Florida, First District.
August 30, 1993.
John T. Willett, Sharon Lee Stedman, and Daniel De Ciccio, De Ciccio & Broussard, P.A., Orlando, for appellants/cross appellees.
William G. Berzak, Orlando and Bill McCabe, Sheperd, McCabe & Cooley, Longwood, for appellee/cross appellant Bradshaw.
*805 Rex A. Hurley and Scott B. Miller, Hurley & Rogner, P.A., Orlando, for appellees Wal-Mart and Corporate Service, Inc.
PER CURIAM.
Appellant, Custom Architectural Metals, appeals the order of the JCC denying apportionment of workers' compensation liability between appellant and appellee Wal-Mart. Appellee/claimant Vernon Keith Bradshaw cross appeals that portion of the JCC's order denying Bradshaw's claim for wage loss benefits for the period December 1990 through August 12, 1991. We reverse both the denial of apportionment and the denial of wage loss benefits and remand to the JCC for further proceedings.
In 1986, claimant, then 48 years old, was hired by appellant Custom as a general construction superintendent, supervising the installation of sheet metal awnings. Claimant testified that on July 21, 1989, at about 12:30 to 12:45 p.m., he went to a convenience store about a mile and a half from the job site to get ice and water for the men working under his supervision. He testified that it was normal for him to do this and that he had done so before. Claimant went directly from the job site to the store in a company vehicle. As he was filling a container with water and ice he was struck by a car which jumped the curb, pinning his left leg between the car's wheel and a brick wall. When he was extricated he was taken to the emergency room of a local hospital. According to emergency room records, claimant's primary injuries were to his left hand, left wrist, and left tibia/fibula. Thereafter he complained of knee pain.
Continuing to complain of knee pain, claimant returned to work after one week, though on crutches and limping. He saw a Dr. Huster on January 22, 1990, who diagnosed a contusion of the left knee with preexisting osteoarthritis. After persistent symptoms, claimant underwent an arthroscopic partial medial meniscectomy of the left knee in June 1990. He missed only about two weeks of work after surgery, but testified that the knee never did recover to its previous condition. After the surgery, claimant's knee would "give way" on occasion, causing him to fall. On September 21, 1990, Huster opined that claimant had reached MMI with a 3% permanent partial impairment to the body as a whole attributable to the industrial accident and resulting knee condition.
On December 12, 1990, claimant was terminated from his employment for what Mr. Davis, the president of Custom, termed "insubordination" which included making disparaging public remarks about a fellow employee and disregarding Mr. Davis' express instruction in the performance of a job at work. Claimant applied for unemployment compensation but was denied benefits on the ground that he was fired for misconduct.
Claimant sought employment as a construction supervisor but could not find work. Eventually, he took a job at Wal-Mart assembling bicycles, even though the job paid about one third of his former salary. Claimant began working at Wal-Mart in April, 1991. On August 12, 1991, claimant fell off a ladder which he was climbing while balancing an assembled bicycle on his left shoulder in an effort to hang the bicycle on a hook in the ceiling as he had been instructed to do. He stated that he climbed the ladder by leading with his right foot on each rung and pulling himself up with the right leg because his left knee was not strong enough to pull him up, or lift his weight:
I would always lead with my right, because my left knee wasn't strong enough to pull me up, or lift my weight up when I was going up.
Claimant stated that his left knee just "gave away" and he fell to the ground. In the fall, he suffered multiple fractures in his left ankle and a fractured left wrist. Claimant underwent surgery to repair the fractures and reached MMI about 8 months after the accident with a 15% to 20% permanent impairment rating to the body as a whole.
In his order, the JCC found the first accident suffered while in the employ of appellant Custom to be compensable. The JCC denied claimant's request for wage loss benefits from 12/90 through 8/12/91 for lack of a causal connection between claimant's wage loss and the accident. The JCC further found that claimant's second accident suffered *806 while in the employ of appellee Wal-Mart was the direct and proximate result of his first accident and knee injury, and that claimant's employment with Wal-Mart did not create any increased risk for claimant's knee to give way. Therefore, the JCC ordered the first employer, Custom, to reimburse Wal-Mart for all benefits paid by Wal-Mart after 9/20/91.
On appeal, Custom argues that the JCC erred in allocating liability for indemnity and medical benefits to Custom alone.[1] In the cross appeal, claimant Bradshaw argues that the JCC erred in denying his claim for wage loss benefits.
Where ... there exists a controversy between two insurance carriers as to which one is liable for the claimant's benefits, the allocation of responsibility between the carriers is based upon the extent to which each accident contributed to the claimant's need for medical care and disability benefits. Sauer Indus. Contracting Inc. v. Ditch, 547 So.2d 276, 277 (Fla. 1st DCA 1989); Atkins Const. Co. v. Wilson, 509 So.2d 1185, 1187 (Fla. 1st DCA 1987); Section 440.42(3), Florida Statutes. As a general rule, a claimant's employment contributes to his injury when there is some causal connection between the injury and the employment, when the claimant's injury has its origin in some risk incidental to the employment, or when the injury flows from the employment as a natural consequence. Hillsborough County School Bd. v. Williams, 565 So.2d 852, 853 (Fla. 1st DCA 1990).
CNA Ins. Co. v. Kemper Ins. Co., 596 So.2d 81 (Fla. 1st DCA 1992).
CNA v. Kemper, and the cases cited therein require a causal connection between the claimant's employment and second industrial injury in order to justify apportionment of liability among carriers. For example, in Sauer v. Ditch, claimant first sustained a back injury while working with scaffolding and subsequently attained MMI. Claimant later suffered subsequent back injuries while moving a pump and carrying pipe for a second employer. In Sauer, apportionment was held proper because the medical testimony indicated that the continuing care necessarily related to the combined effects of the original accident and the subsequent accidents. It should be noted that claimant's back strain was related to the lifting required in his second job. In Kemper, claimant first injured his knee and back during his employment as a janitor when he slipped on a wet floor. After returning to work, the evidence showed that claimant suffered a second fall when his knee buckled while walking, as it had done three or four times previously without warning. Although the claimant suffered both accidents while working for the same employer, the employer changed carriers prior to the second accident, thus leading to the question of apportionment. This court held that claimant's work environment did not contribute to his injuries or aggravate his injuries in any way. "Claimant fell solely because his previously injured knee buckled." Kemper, 596 So.2d at 83. Therefore, the first carrier, Kemper, was found liable for all claimant's injuries suffered in the second fall.
In the present case, it is tempting to affirm the JCC's finding that claimant's first accident was the "direct and immediate and proximate cause" of his second accident and that the "Wal-Mart employment did not create any increased risk for the claimant's knee to give away." Such temptation is fostered by the superficial similarity to the facts of Kemper, where claimant suffered a second accident, when his knee, weakened from a prior accident, gave way. The holding of Kemper, however, is predicated on the fact that claimant was engaged in rather ordinary activity  walking  when his knee gave way unexpectedly. On such facts, this court could not conclude that claimant's work activities caused the knee failure, or increased the likelihood of claimant's knee failure. In the present case, however, it is clear that claimant suffered some sort of weakening of the left knee. From that, common sense suggests that the strain of climbing a ladder would increase the strain on the knee and the likelihood of knee failure. More significantly, the likelihood of knee failure would be *807 increased to an even greater extent where claimant climbed a ladder with an assembled bicycle on his shoulder, simply because of the additional weight involved in such a task. Indeed, in his nonemployment hours, claimant would be unlikely to attempt such a task, for his own testimony indicates a concern as to the amount of weight carried up the ladder. For these reasons, we find that claimant's job activities with Wal-Mart did increase the likelihood of a knee failure. Therefore, we conclude that the JCC erred in failing to apportion liability pursuant to Section 440.42(3), Florida Statutes. On remand, the JCC should conduct proceedings to determine the correct apportionment of liability between Custom and Wal-Mart.
With respect to the denial of wage loss benefits, the JCC's order concludes that claimant's failure to inform prospective employers of his knee injury and associated physical restrictions demonstrates that claimant's wage loss was "not due to his industrial injuries, but rather due to either economic conditions or other factors including his termination for cause" by appellant Custom. We believe this conclusion to be unwarranted. Hypothetically, if a claimant sustains a particular degree of impairment and physical limitation, claimant may be expected to search for employment within his or her capabilities. If a claimant believes himself or herself capable of performing the position sought, there is no need to inform a prospective employer of such physical limitations. If the claimant is hired, wage loss may still be attributable to claimant's work restrictions although claimant may not have informed the employer of such restrictions. In fact, in the present case, claimant testified that he did not inform Wal-Mart of any work restrictions because he felt he could perform the job.[2]
Implicit in the JCC's order is the finding that claimant was terminated from employment with appellant Custom for insubordination. Such a finding may be sufficient to support a conclusion that claimant's immediate wage loss was not due to claimant's physical restrictions. See Publix Supermarket, Inc. v. Hart, 609 So.2d 1342 (Fla. 1st DCA 1992) (but for claimant's termination for insubordination, claimant would have maintained employment and suffered no immediate wage loss); see also Sparks v. Aluma Shield Industries, 523 So.2d 680 (Fla. 1st DCA 1988). However, even such a proper denial of wage loss benefits does not perpetually foreclose claimant from receipt of such benefits. Publix, 609 So.2d at 1345 (and cases cited therein). In the present case, claimant was not informed of his obligation to perform a good faith job search. Notwithstanding, claimant performed a job search and there is no issue raised as to the adequacy of such job search. We find that the JCC employed an improper standard for the determination of claimant's eligibility for wage loss benefits, and the denial of same should be reversed and the case remanded for reconsideration of the issue in conformity with this court's opinion in Publix Supermarket v. Hart, supra.
REVERSED and REMANDED for further consistent proceedings.
BOOTH and MINER, JJ., and SHIVERS, Senior Judge, concur.
NOTES
[1] Appellant also raises two other issues relating to the question of apportionment. We find appellant's arguments to be without merit and decline to address these issues.
[2] Claimant correctly cites Certified Grocers v. Conerty, 529 So.2d 1201, 1204 (Fla. 1st DCA 1988), for the proposition that notice to prospective employers of a claimant's physical restrictions is not a necessary condition of an effective job search. However, this statement is not precisely related to the JCC's conclusion that failure to so inform prospective employers demonstrates a lack of causal connection between physical restrictions and wage loss.