510 So.2d 1056 (1987)
Joseph McCABE, Appellant,
v.
BECHTEL POWER CORP., and Florida Power & Light Corp., Appellees.
No. BR-434.
District Court of Appeal of Florida, First District.
July 28, 1987.
*1057 Renee R. Pelzman, of Levine, Busch, Schnepper & Stein, Miami, for appellant.
Albert Harum, Jr., Miami, for appellees.
ZEHMER, Judge.
Joseph McCabe appeals a workers' compensation order denying his claim for wage-loss benefits, rehabilitation, and future medical care. Finding error in the deputy commissioner's resolution of these issues, we reverse.
At the time of his accident, claimant worked for Florida Power & Light as a pipefitter. He had, some twenty years before, undergone surgery on both his knees and had since worked with neither pain, lost time from work, nor other knee-related problems. On November 16, 1983, claimant fell at work. His left foot caught between a wall and a curb, twisting his left leg, and he immediately felt pain in the knee joint. Claimant reported the injury but continued to work for several days in the hope that his knee would heal.
Because the pain in his knee increased, claimant went to a physician authorized by the carrier and was told to stay off the leg for one week. Upon his return to work the pain continued, so claimant again saw this physician and was referred to Dr. Barry, an authorized board-certified orthopedic surgeon. Dr. Barry first saw claimant on December 2, 1983, and obtained a history of the injury consistent with the facts related above. He operated on claimant's knee in August 1984, and removed the remaining twenty percent of claimant's meniscus, some of the lining of his tibia, and his myofibril. Dr. Barry's operating report stated that portions of claimant's left knee had been recently fragmented. He limited claimant from squatting, stooping, climbing, or pivoting with his weight on his left foot, and he eventually released claimant on December 8, 1984. His report at that time stated that claimant was discharged with no permanency.
Claimant received workers' compensation benefits from the date of his operation until the end of December 1984. His job search from January 1985 through April 1985 consisted of contacting his union hall and using newspaper classified ads. He attempted to return to work for the employer in April or May 1985, but was rejected after two and one-half days because of medical restrictions which interfered with his performing work as a pipefitter.
Claimant filed a claim for additional benefits in January 1985. His attorney of record was Howard Silverstein. Before the *1058 hearing, however, Bernard Butts was substituted as claimant's counsel. The initial hearing on this claim took place on June 6, 1985, before Deputy Commissioner Trask. A follow-up hearing was held February 26, 1986, before Deputy Commissioner Vocelle. A third hearing, before Deputy Commissioner Vocelle, was held May 14, 1986, on claimant's motion for authorization of a physician. In the hearings on the claim for benefits, live testimony was taken from claimant and several witnesses and both doctors testified by deposition.
In a deposition taken by Mr. Butts, Dr. Barry testified that the American Medical Association's Guides to the Evaluation of Permanent Impairment (AMA Guides) in force at the time he released the claimant gave a disability rating for a knee only if there was a loss of motion. Because claimant had no loss of motion, even though he continued to suffer pain, instability, and a tendency to suffer new injuries, Dr. Barry's December 1984 report indicated no permanent impairment.[1] Dr. Barry explained that approximately six months after he released claimant, a new version of the AMA Guides was published that allowed a rating for this type knee problem. Under these new AMA Guides Dr. Barry gave claimant a twenty percent impairment rating. He ascribed twenty-five percent of this impairment to claimant's November 16, 1983, accident and seventy-five percent to deterioration after the surgery performed some twenty years before, for a total of five percent impairment attributable to the recent accident. Dr. Barry also testified that, although claimant's knee would have continued to deteriorate without the accident, the accident caused the rate of deterioration to increase.
Dr. Howard Kurzner, an orthopedic surgeon, also testified by deposition. He examined claimant once, in May 1985. He also reviewed Dr. Barry's report of the knee surgery. Dr. Kurzner, although not expressing disagreement with anything in Dr. Barry's report, expressed the opinion that most of claimant's impairment was due to his preexisting condition and degenerative changes after the prior surgery. Dr. Kurzner specifically stated that he was relying on Dr. Barry's reports of the surgery. Although Dr. Kurzner took X rays of claimant's knee, he opined that X rays were not as useful as an arthroscope in revealing the specific changes in the knee or when they occurred. Unlike Dr. Barry, Dr. Kurzner did not perform arthroscopic surgery on claimant's knee.
The deputy found that any permanent impairment suffered by claimant was the result of degeneration after his knee surgery and not the result of his accident. He rejected the testimony of Dr. Barry and expressly accepted the testimony of Dr. Kurzner because he found it to be more consonant with logic and reason than that of Dr. Barry. The deputy specifically noted that Dr. Barry's testimony changed when he was deposed by claimant's new attorney, a fellow Hialeahan. The deputy also found, as a secondary holding, that claimant's job search was inadequate to show entitlement to wage-loss benefits during the months in question.
Claimant challenges the finding that no permanent impairment is attributable to the November 1983 injury as not supported by competent, substantial evidence and applicable principles of law. Specifically, claimant argues that the deputy had no valid basis for rejecting the testimony of Dr. Barry, and thus erred in denying claimant's request for rehabilitation benefits. Claimant does not contest the deputy's findings with respect to the job search.
The findings of a deputy must be based on competent, substantial evidence and accord with logic and reason. E.g., Gillespie v. Anderson, 123 So.2d 458 (Fla. 1960). The deputy commissioner stated in his order that he rejected Dr. Barry's testimony because Dr. Barry changed testimony when *1059 he was deposed by a "fellow-Hialeahan." We can only infer from this observation that the deputy declined to accord Dr. Barry the same level of credibility as Dr. Kurzner because he surmised that claimant's counsel was from the same city as Dr. Barry and somehow influenced the doctor to color his testimony in favor of claimant.
We are unable to accept this interpretation of the evidence. The record does not reflect that Mr. Butts is from Hialeah, nor does it reflect that Mr. Butts either knew Dr. Barry or had a relationship with Dr. Barry that would cause the doctor to color his testimony. We can find nothing in the record to support such a conclusion.
Neither does it appear that Dr. Barry "changed" his testimony. Dr. Barry testified that his medical reports stated claimant had no permanent impairment because the AMA Guides in effect at the time did not allow him to give this sort of injury any degree of permanent impairment. The later version of the Guides changed the ratings for knee injuries, and Dr. Barry then rated the claimant's injury, under the new version of the Guides, as indicating some permanency attributable to the accident in question. This explanation does not constitute a "change" in testimony, but is clearly consistent with his prior reports, which discussed claimant's pain and loss of stability in his knee. The deputy's expressed rationale for rejecting Dr. Barry's testimony is not supported by the record.
Having carefully reviewed the depositions of both doctors, we are unable to find that Dr. Kurzner's testimony is in actual conflict with Dr. Barry's testimony in any significant respect. Dr. Kurzner's opinion was based, for the most part, on his reading of Dr. Barry's reports. Dr. Kurzner was never asked, and thus never expressed, whether he disagreed with Dr. Barry's opinions regarding claimant's injury. Dr. Kurzner states at several points in his deposition that "most" of the claimant's impairment resulted from degenerative changes following his prior surgery; at no time does he state that none of claimant's present physical impairment is due to the November 1983 accident. Dr. Barry was in a better position than Dr. Kurzner to evaluate claimant's injury, both because he was claimant's treating physician and because he performed claimant's surgery. Thus, Dr. Barry had an advantage over Dr. Kurzner of having visually examined the interior of claimant's knee through an arthroscope, which permitted him to better observe its true condition and the effect of the recent injury.
All the medical evidence in this case was presented by deposition. The vantage point of this court is not inferior to that of the deputy commissioner in interpreting deposition evidence, and it would appear consonant with logic and reason to accord Dr. Barry's testimony effect at least equal to that given by Dr. Kurzner. Metropolitan Transit Authority v. Bradshaw, 478 So.2d 115 (Fla. 1st DCA 1985); Poorman v. Muncy & Bartle Painting, 433 So.2d 1371 (Fla. 1st DCA 1983); Kelly v. Florida Atlantic University, 413 So.2d 833 (Fla. 1st DCA 1982). We hold that the record contains no competent, substantial evidence to support the deputy's finding that claimant suffered no permanent impairment as a result of his November 1983 industrial accident. To the extent that the appealed order finds to the contrary, it is reversed.
In Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967), the supreme court discussed the issue of apportionment between a claimant's preexisting condition and his disability following a compensable injury:
[I]n cases in which a pre-existing disease is aggravated by industrial injury, the resulting disability, determined as of the time of the award, is to be considered as falling into three categories: (1) that which resulted directly and solely from the accident and which would have occurred even in the absence of the pre-existing disease; (2) that which resulted from the acceleration or aggravation of the pre-existing disease by the accident; and (3) that which resulted from the normal progress of the disease and would have existed had the accident never occurred. Disability falling within the first two categories is compensable under the terms of the statute.
*1060 196 So.2d at 752-53; see also Escambia County Council on Aging v. Goldsmith, 500 So.2d 626 (Fla. 1st DCA 1986) (en banc). In this case there was evidence that claimant had not suffered any diminution of his wage-earning capacity attributable to the preexisting condition of his knees before the industrial accident; yet, after the accident claimant has been unable to return to his former employment. On remand, the deputy should determine the extent, if any, to which claimant's permanent disability should be apportioned between his preexisting condition and the resulting impairment due to his industrial accident. If necessary, the deputy may receive additional evidence on this issue.
We also observe that the date claimant reached maximum medical improvement has not been determined. This matter must also be decided upon remand before any ruling on permanent disability benefits can be made.
Claimant does not challenge the deputy's findings regarding work search, and we find no error in the deputy's determination that claimant's work search for the period January 1985 through April 1985 was inadequate. That ruling is affirmed.
AFFIRMED in part, REVERSED in part, and REMANDED.
JOANOS and WIGGINTON, JJ., concur.
NOTES
[1] It is clear from his deposition that Dr. Barry was unaware of this court's decision in Trindade v. Abbey Road Beef `n' Booze, 443 So.2d 1007 (Fla. 1st DCA 1983), which held that disability caused by a physical condition not covered by the AMA Guides could nevertheless be rated. Trindade involved a knee injury which, like claimant's, could not be rated under the AMA Guides then in force.