625 So.2d 921 (1993)
Robert LUTTRELL, Appellant,
v.
ROGER HOLLER CHEVROLET, and Crum & Forster, Appellees.
No. 92-786.
District Court of Appeal of Florida, First District.
October 15, 1993.
*922 Bill McCabe, Longwood, for appellant.
Mark S. Spangler, Rissman, Weisberg, Barrett & Hurt, P.A., Orlando, for appellees.
ERVIN, Judge.
Claimant appeals from a workers' compensation order denying his claim for indemnity benefits from the date of maximum medical improvement (MMI), incidental costs, penalties, interest, and attorney's fees, arguing that in denying the claim, the judge of compensation claims (JCC) erroneously relied upon the medical testimony of one of claimant's treating physicians who had opined that claimant's industrial accident of September 28, 1989 was only a temporary exacerbation of a preexisting condition, and that there was no resulting permanent impairment (PI) associated with the accident. We affirm in part, reverse in part, and remand for further consistent proceedings.
On September 28, 1989, claimant, who suffered from preexisting degenerative disc disease, injured his lower back while installing a dash carrier on an automobile. During the course of claimant's medical care, he received treatment from six different physicians, three of whom related claimant's lumbar condition to his industrial accident, opined that claimant had reached MMI with various percentages of PI, and placed restrictions on claimant's employment activities. One of those who did not so conclude, Dr. D'Erano, a chiropractor, while stating that there was no specific event at work which created any situation of permanent injury, nevertheless believed that claimant's duties at work temporarily aggravated his preexisting condition. He also placed limitations on claimant's work performance. Another physician, Dr. Broom, an orthopedic surgeon, initially testified by deposition that claimant had suffered a sprain to his lower back as a result of the industrial accident, which permanently aggravated his prior condition, and that he was at MMI as of August 14, 1991, with a five percent PI. Dr. Broom, as well as all the physicians who were asked to give opinions regarding claimant's condition, was, however, unaware from the history claimant provided that claimant had sustained an earlier injury to his lower back. Later, over objection, Dr. Broom was asked to review certain medical records in the possession of Adjustco Inc., a carrier furnishing workers' compensation insurance to the employer in 1987, relating to an October 1987 injury to claimant's lower back while he was working for the same employer. After doing so, Dr. Broom stated that it would be extremely difficult for him to relate claimant's PI solely to his later industrial *923 injury, and that it was more likely that the 1989 accident only temporarily exacerbated claimant's prior condition, thereby resulting in no PI attributable to the 1989 industrial injury alone. He therefore opined that claimant's PI, as related to the 1989 industrial injury, was zero percent, and he concurred with another physician's MMI date of September 18, 1990.[1]
At the hearing, claimant testified that he had no symptoms or complaints involving his lower back before September 1989, and that in 1987 he suffered an injury to his neck and upper shoulder while working for the employer. In contradiction to claimant's testimony, the employer/carrier (E/C) presented the testimony of the claims supervisor for Adjustco Inc., who recounted that he had processed a claim appellant filed resulting from the 1987 accident. He brought the records pertaining to that injury to the hearing, including a notice of injury form claimant signed referring to a lower back injury, as well as insurance claim forms covering numerous visits to Dr. Seltzer, the then-treating chiropractor. Over claimant's hearsay objection, the JCC allowed the records into evidence, holding that they were admissible for the purpose of impeachment, and that they complied as well with hearsay exceptions set forth under Sections 90.803(6) (business records), 90.803(18) (admissions by a party opponent), and 90.804(2) (declarations against interest), Florida Statutes (1989).
The notice of injury form, signed by Luttrell in October 1987, and verified by him at the hearing, stated that while he was removing a windshield, he strained his groin and lower back. A workers' compensation history Luttrell signed on October 16, 1987, also recited the back injury. Numerous reports from Dr. Seltzer, beginning in 1987 and continuing through 1988 and March 1989, refer to claimant's low back pain. A final report stated that claimant had reached MMI as to the 1987 injury on March 6, 1989; the report does not, however, indicate any amount of PI claimant sustained.
In his final order denying the claim for benefits pertaining to the 1989 accident, the JCC, after considering all of the evidence, found claimant's testimony "wholly unbelievable" and observed that Dr. Broom was the only physician who was aware of claimant's complete medical history involving both the 1987 and 1989 injuries. The JCC therefore accepted Dr. Broom's testimony over that of other physicians who had testified to the contrary, because they had not been given a complete history due to "claimant's intentional misrepresentations on his prior medical history." Accordingly, based upon the testimony of Dr. Broom, the claim for wage loss (WL) was denied.
Appellant first contends that the JCC erred in admitting into evidence, over claimant's hearsay objection, Dr. Seltzer's medical records relating to claimant's 1987 industrial accident. We agree that the JCC did not err in so ruling. The documents which claimant himself signed were properly admissible under Section 90.608(1)(a), Florida Statutes (1989), which allows the introduction of a witness's prior inconsistent statements for the purpose of impeachment. They were also admissible under section 90.803(18)(a), which permits the introduction of a statement offered against a party if it is the party's own statement in either an individual or a representative capacity. Thus, even if it could be said that it was error to admit the remaining business records of Dr. Seltzer, which involved no direct admissions by claimant, their introduction should, in our judgment, be considered only harmless error because they were largely cumulative to other admissible documents. See Quinn v. Millard, 358 So.2d 1378, 1383 (Fla. 3d DCA 1978).
The remaining records, consisting of insurance claim forms from Adjustco's files and Dr. Seltzer's progress reports to the carrier, were admissible under section 90.803(18)(c), permitting the admission into evidence of "[a] statement by a person specifically authorized by [a party] to make a statement concerning the subject." See Charles *924 W. Ehrhardt, Florida Evidence § 803.18(c), at 663-64 (1993 ed.). The insurance claim forms at issue contained the claimant's authorization for "the release of any medical information necessary to process this claim." The clear import of this statement was to permit Dr. Seltzer to convey his diagnosis of lumber IVD displacement to Adjustco, as well as to provide it with his progress reports. See United States v. Duncan, 919 F.2d 981, 987 (5th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2036, 114 L.Ed.2d 121 (1991) ("A patient routinely authorizes the release of medical records for use by insurance companies. A medical provider without express authority to release information would be acting as the patient's agent in obtaining payment of medical expenses from insurance companies.").
While we find no error in the admission of the above documents, we are nonetheless of the opinion that the JCC erred in denying the claim based upon the opinion testimony of Dr. Broom. Although many of the findings the JCC recited in his order are supported by competent, substantial evidence, e.g., that claimant lied when he testified that he had suffered no prior back injury before the September 1989 accident; that claimant failed to advise any of his treating physicians that he had any back pain before the 1989 accident; that Dr. Broom was the only physician who became aware of the claimant's complete history; nevertheless, the JCC's essential finding, relying upon Dr. Broom's testimony that the 1989 injury only temporarily exacerbated claimant's preexisting condition, and that claimant suffered no PI attributable to the 1989 injury alone, was not, in our judgment, solidly rooted in a firm foundation of fact,[2] because this finding was not supported by either the substance of Dr. Broom's testimony or other relevant evidence. See Tucker v. Agrico Chem. Co., 476 So.2d 729, 731 (Fla. 1st DCA 1985). Moreover, in that the JCC's findings depended on medical evidence contained within the physicians' reports and deposition testimony, our vantage point as a reviewing court is not inferior to that of the trier of fact in interpreting such evidence. McCabe v. Bechtel Power Corp., 510 So.2d 1056 (Fla. 1st DCA 1987).
We consider the critical finding at issue to be fatally flawed because certain evidence in the record reveals that, despite the occurrence of the 1987 accident, claimant missed at most three days of work between the 1987 and 1989 accidents. In fact, Dr. Seltzer's final reports pertaining to the 1987 injury reflect that claimant's condition was resolving itself, that claimant was asymptomatic, and that he had reached MMI in March 1989 without any assessment of PI and with no limitations. After the September 1989 accident occurred, however, a PI rating was for the first time given and limitations were placed upon him by five of his six physicians.
In our judgment, some of the same causation principles applicable to apportionment cases apply as well to the case at bar. In Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967), the Florida Supreme Court established certain criteria in regard to the issue of whether apportionment is appropriate in situations where a preexisting condition is aggravated by a work-related accident, thereby causing disability. Under such circumstances, the ensuing disability must be considered as falling into one of the following three categories: (1) that resulting directly and solely from the accident and which would have occurred even in the absence of the preexisting disease, (2) that resulting from the aggravation of the preexisting disease by the accident, and (3) that resulting from the normal progress of the disease and which would have existed had the accident never occurred. Id. at 752. Disability falling within the first two categories is compensable. Id.; Escambia County Council on Aging v. Goldsmith, 500 So.2d 626, 629 (Fla. 1st DCA 1986).
Thus, in a claim between an employer and an employee, apportionment of the employee's preexisting condition would only be warranted "when and to the extent that the pre-existing disease either, (1) was disabling at the time of the accident and continued to be so at the time the award is made or (2) was producing no disability at the time of the *925 accident but through its normal progress is doing so at the time... an award is made." Evans, 196 So.2d at 752-53. But, if there is no evidence that a prior injury was disabling at the time of the industrial accident, or that it had progressed to the point of causing disability at the time the award is made, it is improper to apportion out of the award a preexisting condition. See Holloway v. Curcie Bros., Inc., 203 So.2d 499 (Fla. 1967); Barile Excavation & Pipeline Sewer Improvement v. Hough, 417 So.2d 843 (Fla. 1st DCA 1982); Sarasota County v. Reichert, 413 So.2d 163 (Fla. 1st DCA 1982).
In applying the Evans causation principles to a case not involving apportionment, this court, in Delgado v. Blanco & Sons Catering, 606 So.2d 658 (Fla. 1st DCA 1992), reversed an order denying a claim for surgical repair of a hernia and temporary total disability benefits. In so doing, we noted that the medical evidence of aggravation of a preexisting condition was corroborated by other evidence in the record showing that prior to the occurrence of the industrial accident, claimant's preexisting condition had never disabled him from working; rather, the record disclosed that claimant had continued to perform his job, albeit with pain, even after being diagnosed with an inguinal hernia. We therefore concluded that the claimant's condition fell into the second category stated in Evans: that which resulted from an aggravation of the employee's preexisting condition.
In a case similar to that at bar, involving successive industrial injuries to an employee while working for the same employer, we applied the Evans causation principles to bar the employee from receiving benefits from the carrier on the risk at the time of claimant's earlier injuries. In Structural Systems, Inc. v. Worthen, 463 So.2d 502 (Fla. 1st DCA 1985), claimant suffered two injuries to his left knee while working for the employer in 1980. In 1983, claimant again injured his left knee and subsequently entered into a washout agreement with the carrier at risk in 1983. He then sought benefits from the prior carrier, alleging that the injuries he sustained in 1980 created a medical predicate for the 1983 injury. In reversing the order finding the first carrier liable, this court noted that although the medical testimony established that the 1980 injuries caused damage to claimant's knee which predisposed him to the later 1983 injury, the record also revealed that the claimant lost only a few days from work between the 1980 and 1983 accidents. Presumably, had claimant not agreed to the washout, the later carrier would have been solely liable for all of claimant's compensation benefits. Indeed, the Florida Supreme Court has long recognized that despite the fact that an employee may suffer an injury to the same area of the body as that earlier injured, if the prior injury is of such a nature that the employee is able to continuously engage in manual labor until the occurrence of the subsequent injury, the later E/C will be solely responsible for compensation benefits. See Charles A. Stewart Co. v. Dobson, 153 Fla. 693, 15 So.2d 481 (1943).
The Evans rule has also been applied within the context of division of liability between multiple insurers on the risk at the time of two separate industrial accidents, pursuant to the provisions of Section 440.42(3), Florida Statutes (1989). In Hayward Trucking, Inc. v. Aetna Insurance Co., 445 So.2d 385 (Fla. 1st DCA 1984), we reversed the JCC's order directing the carrier furnishing insurance at the time of claimant's first accident to reimburse the second carrier providing insurance at the time of the second industrial accident, and held that the second carrier was solely responsible for the payment of the employee's benefits for the primary reason that, following his first accident, claimant was not disabled and could return to work in his former position, although he was experiencing pain.
In applying the above causation principles to the present case, we consider it clear that claimant suffered no disability as a result of the earlier 1987 industrial injury. "`Disability' means incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury." Section 440.02(10), Fla. Stat. (1989). As the supreme court noted in City of Hialeah v. Warner, 128 So.2d 611 (Fla. 1961), disability is not simply the diminution of an employee's wage-earning capacity, but is rather an incapacity for carrying on, in any field of endeavor, *926 work which will equal or surpass income earned at the time of the injury. Id. at 613. Thus, claimant's continued ability to work, following his 1987 industrial accident, until the occurrence of the 1989 accident, seriously undermines Dr. Broom's testimony that none of claimant's present five percent impairment was referable to the 1989 injury. Indeed, as we observed in R.P. Hewitt & Associates of Florida, Inc. v. McKimie, 416 So.2d 1230, 1232, n. 1 (Fla. 1st DCA 1982), an expert's "opinion based on facts not supported by the record cannot constitute proof of the facts necessary to support the opinion."
In conclusion, because this court's vantage point is not inferior to that of the JCC in interpreting medical testimony contained in reports and depositions, and because the JCC's acceptance of one physician's testimony over that of others is not, in our judgment, solidly rooted in a firm foundation of fact, we reverse the JCC's determination that the claimant sustained a temporary exacerbation of a preexisting condition with a zero percent PI, as related to the September 28, 1989 accident, and remand the case for further consistent proceedings for the purpose of determining claimant's entitlement to WL benefits, costs, interest, penalties, and attorney's fees.
AFFIRMED in part, REVERSED in part, and REMANDED.
WENTWORTH, Senior Judge, concurs.
WOLF, J., concurs in result only.
NOTES
[1] The sixth physician, Dr. Seltzer, was the first physician to assist claimant following the 1989 injury. He offered no opinion because claimant, dissatisfied with his services, sought medical care from other physicians shortly after beginning treatment with Dr. Seltzer.
[2] See Geiger Distrib., Inc. v. Snow, 186 So.2d 507, 509 (Fla. 1966).