637 So.2d 66 (1994)
Philip J. KING, Appellant,
v.
WINN DIXIE STORES INC. and Crawford & Company, Appellees.
No. 92-4225.
District Court of Appeal of Florida, First District.
May 18, 1994.
*67 David E. Hill, Ocala, for appellant.
Bernard J. Zimmerman and Derrick E. Cox of Zimmerman, Shuffield, Kiser & Sutcliffe, P.A., Orlando, for appellees.
DAVIS, Judge.
In this worker's compensation case, Philip J. King appeals an order modifying a previous award of attendant care benefits from 49 to 12 hours a week, and denying attorney's fees. We reverse in part and remand for further proceedings.
Mr. King was employed as a meat cutter by Winn Dixie when he suffered a compensable industrial injury on July 30, 1988. He fell while lifting a box over the door jamb of a walk-in freezer, permanently injuring his back. In an order dated May 29, 1990, Judge of Compensation Claims Crooke ordered the E/C to pay for attendant/nursing care services beginning April 29, 1989, in the amount of 49 hours a week (7 hours a day, 7 days a week). This award was appealed by the E/C and affirmed in Winn Dixie Stores, Inc. v. King, 579 So.2d 313 (Fla. 1st DCA 1991).
A number of different doctors have seen Mr. King and testified at various times in this case. His authorized orthopedist, Dr. Stalcup, testified by deposition on October 31, 1989. In this deposition, Dr. Stalcup established the need for attendant care granted in the May 29, 1990, order by Judge Crooke. Dr. Stalcup continued to treat claimant and testified by deposition again on February 21, 1992. He testified that claimant's physical condition was unchanged but that claimant had learned to live with his chronic pain and was no longer in need of attendant care services.
In the order on appeal, Judge of Compensation Claims Hudson stated that the original order awarding 49 hours a week of attendant care benefits was based on Dr. Stalcup's first opinion and that his opinion had substantially changed. The JCC concluded that claimant's need for attendant care benefits had changed. This ruling was based in part upon the changed testimony of Dr. Stalcup, partly upon the testimony of other doctors, and in part on the candor and demeanor of the live witnesses, including claimant's family members.
One of the other doctors upon whose opinion JCC Hudson apparently relied was Dr. Kaplan, who testified in an August 1992 deposition that claimant did not need attendant care benefits. However, Dr. Kaplan also testified that he last saw claimant on January 25, 1989, after performing carpal tunnel surgery. Dr. Kaplan testified that claimant was never in need of attendant care services, beyond perhaps a week of assistance after *68 the carpal tunnel surgery. The JCC's order does not acknowledge the fact that this opinion was rendered based solely upon treatment and examinations which ended over a year before the order of Judge Crooke initially awarding the attendant care benefits.
Dr. Batson is claimant's authorized treating chiropractor. He testified by deposition on March 5, 1992, and again on August 13, 1992. In the first deposition, Dr. Batson testified that attendant care could reasonably be reduced to seven hours a day for three days a week, based upon objective improvement seen in claimant's condition at a recent examination. In the second deposition, Dr. Batson testified that his opinion had changed because the claimant was unable to take medications for spasm, swelling or pain, leading to an increase in his symptoms. In Dr. Batson's revised opinion, the claimant was in need of assistance for 40 hours a week. He broke this down into 8 hours a week for transportation (to obtain medical care, groceries and to go to the pharmacy); 16 hours a week for housework (meals, cleaning and laundry); 4 hours per week for yard work; and 12 hours per week for medical assistance (providing ice packs, helping with TENS unit, assisting with baths, helping him dress and, when necessary, helping him to walk). Dr. Batson testified that an increase in both "subjective and objective findings" justified his changed opinion. He testified that he had not seen any improvement in claimant's condition, and that the first deposition recommending a decrease in attendant care was based upon the effects of the medications claimant was no longer able to take. In addition, Dr. Harry Jones reviewed claimant's medical records and performed a one time orthopedic examination. He concluded that claimant was in need of near-constant attendant care, but that the original award of 49 hours a week was a reasonable compromise. He saw no reason to reduce it.
The decision of the JCC must be affirmed if supported by competent substantial evidence. Lawrence v. O.B. Cannon & Sons, Inc., 579 So.2d 812 (Fla. 1st DCA 1991); Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983). However, we must reverse, when, as here, it appears that the JCC overlooked or ignored evidence in the record. See Ate Fixture Fab v. Wagner, 559 So.2d 635, 638 (Fla. 1st DCA 1990). Dr. Stalcup opined that claimant was better able to deal with his chronic pain than at the time of the original order of attendant care benefits, and that therefore no further benefits were needed. It would appear from the record that this opinion was rendered at a time when claimant was taking medications to reduce swelling, spasm and pain. The JCC never acknowledged or addressed the evidence of Dr. Batson that claimant is no longer able to take those medications due to liver dysfunction, and that Dr. Batson saw a decrease in claimant's ability to care for himself from the time of his first deposition to his second deposition five months later. The question whether this evidence was considered by the JCC is not sufficiently addressed by a boiler plate recitation that the JCC considered "all the evidence."
We are also unable to discern from the record and the order entered by the JCC the exact basis for the award of attendant care benefits in the amount of 12 hours of care per week. None of the doctors or the lay testimony clearly established need in this amount. Although Dr. Batson's breakdown of benefits suggested 12 hours for medical care, he also recommended 8 hours a week for transportation, at least partly related to medical needs. The order under review awards attendant care benefits of 12 hours a week "for medically necessary activities, which includes ... transportation to all medically necessary activities."[1] Upon remand, the JCC is directed to clarify the basis for the amount of hours awarded. See Allied Discount Tires v. Cook, 587 So.2d 626 (Fla. 1st DCA 1991).
Finally, Mr. King appeals the decision of the JCC not to award attorney's fees below. E/C has disputed Mr. King's entitlement to attorney's fees on the ground that the statute in effect at the time of Mr. King's *69 injury did not permit attorney's fees in modification proceedings. Fla. Stat. § 440.34 (1988) imposed upon E/C the obligation to pay claimant's attorney's fees when (1) claimant successfully asserted a claim for medical benefits only; (2) carrier acted in bad faith; or (3) claimant prevailed on the issue of compensability. Although the JCC expressly declined to award attorney's fees under the theory that this was a new award of medical benefits, there is nothing in this record to indicate whether that was an issue argued before the JCC or an independent observation. It is therefore unclear whether the JCC fully considered whether this proceeding should be viewed as a modification for which no attorney's fees are available or a claim for medical benefits for which fees may be awarded. Cf. Florida Refreshment and General Adjustment Bureau v. Whaley, 577 So.2d 1368, 1370 (Fla. 1st DCA 1991).
Accordingly, this cause is REVERSED IN PART and REMANDED for further proceedings consistent with this opinion.
MINER and MICKLE, JJ., concur.
NOTES
[1] We express no opinion whether, in an appropriate case, some of the other activities included in Dr. Batson's recommended hours of attendant care may be deemed "medically necessary" assistance.