MICKLE, Judge.
Claimant, Eric McCleod, appeals from an order of the judge of compensation claims (JCC) denying his claims for past and future dental care and for past and future medical care and treatment for his lumbar back condition. We affirm the denial of the claim for dental care, and reverse and remand for the JCC to reconsider the claim for medical treatment of the lumbar back.
Claimant was working for Air Technology, the employer, as an air conditioner installer on July 7, 1986, when he was involved in a vehicular collision. He was rear-ended while stopped at an intersection, causing his front teeth to hit the steering wheel and then propelling his head backward through the glass window of his truck. Claimant received initial treatment at the emergency room where he was provided with a neck brace. Claimant testified that immediately following the accident, he experienced pain in his shoulder, knee, leg and back. The emergency room report reflects claimant complained only of knee, head and neck pain. After missing two days, claimant returned to work. He continued to experience pain, however, and permanently left work after one month, feeling he no longer could perform his duties. For some time he washed and polished cars but eventually stopped due to his back, head and shoulder pain.
During this time period, claimant visited several physicians. He saw Dr. Schinbickler, a dentist, who took x-rays and informed claimant that his front teeth were bruised. In a medical report dated July 12, 1986, Dr. Schinbickler noted “[sjensitivity due to deep bruise of bone. Area should return to normal within a few weeks.” Claimant also saw Dr. West, an orthopedic surgeon, on October 22, 1987. Dr. West did not testify at the hearing before the JCC, but his October 23, 1987, letter to the carrier was submitted into the record. Dr. West reported that claimant complained of lower back discomfort. An examination revealed some restricted cervical spine motion, although claimant had a considerable amount of voluntary contractions which limited the doctor’s ability to interpret basic pathology; some flattening of the dorsal spine in the mid-portion between D3 and D7; narrowing of the L5-S1 lumbar inter-vertebral space as well as the L4 interverte-bral space; and some asymmetry of the facets at the L5 level. Dr. West concluded:
The patient has a problem with dorsolum-bar spine with restricted motion and muscle spasm. It would be necessary for me *661 to see this patient on more than one occasion to properly identify the type of pathology present. He has hypomobility of the dorsal spine on the right side as mentioned in the physical examination. He has some persistent muscle spasm in the lumbar spine. One would have to rule out' the presence of a mid-line disc abnormality. Once he has been seen on one or two other occasions and the presence of nerve pressure has been excluded, then one could intelligently design the proper treatment program. It is my impression that this patient is going through a phase of disability at this time.
Claimant was seen by Dr. West on only one occasion. Also, claimant visited a chiropractor, Dr. Purelli, whose medical reports are not included in the record.
In 1988, claimant relocated to Georgia, where he became employed with another air conditioning and heating company, performing duties similar to those that he had performed with Air Technology. Claimant requested dental and medical treatment and was authorized to be seen by Drs. Eisner, Colier, and Levine. The medical reports of these three physicians were admitted into the record. An initial report of orthopedist Dr. Levine, dated January 12,1988, reflects a notation that claimant had related that his lower back did not bother him until after he sought chiropractic treatment following the accident. Following an initial examination, Dr. Levine found cervical, thoracic and lumbar strain. He recommended that claimant undergo a physical therapy regimen and be started on anti-inflammatory medication. Dr. Levine noted that no treatment would be started, however, since claimant had been authorized for only one visit. After a followup examination on April 17, 1989, Dr. Levine reported that a bone scan was normal and that there seemed to be a lack of objective findings to correlate with the subjective complaints. Dr. Levine recommended that an EMG and cervical MRI be conducted. Following a May 8, 1989, visit, Dr. Levine reported that the cervical MRI and EMG were normal and saw no objective reason why claimant should not be able to return to full duty. Dr. Eisner, a neurologist, saw claimant once on April 25, 1989, and reported a bilateral arm paresis of unknown etiology which does not conform to any objective findings. Dr. Eisner opined that claimant’s affect was not within the norm. Finally, Dr. Colier, an orthopedic physician, saw claimant twice in December 1990 and concluded that claimant did not need any medical treatment.
In July 1991, claimant came home from work with a severe headache. While lying on the couch, he sneezed, causing his entire body to become numb and then ache severely in the leg and buttock region. Following this incident, claimant sought treatment on his own from orthopedic surgeon Dr. Cohen, who performed an MRI. Claimant returned to work following the sneezing incident, but his pain increased so much that he quit in December 1991. Dr. Cohen referred claimant to orthopedic surgeon Dr. Schechter, who began providing unauthorized treatment. In a deposition taken February 13, 1992, Dr. Schechter testified that when he first saw claimant on December 9,1991, claimant complained of lower back pain relating to the 1986 industrial accident. Claimant recounted the sneezing incident and also reported to Dr. Schechter that his back had “gone out” in late November 1991. Dr. Seheeter interpreted the MRI report as showing a herniated disk at the “left side of the L5-S1 level” and a “mild disk bulge at the L4-5 level.” On January 21, 1992, following unsuccessful attempts applying conservative treatment, Dr. Schechter performed lumbar spine surgery. Dr. Schechter’s post-operative diagnosis was a herniated disk at the L5-S1 level. When asked whether he had an opinion as to the relationship between the industrial accident and claimant’s orthopedic problems for which surgery was performed, Dr. Schechter opined:
What I believe is that he had the injury as mentioned on July 7th of ’86, that he disposed his back and probably injured his disk initially and that his minor event when he sneezed on December 6th probably just exacerbated his pre-existing condition.
In reaching this conclusion, Dr. Schechter acknowledged that he had not reviewed the reports of Drs. West, Levine, Eisner or Colier. Dr. Schechter did not, however, believe that these reports would change his opinion because claimant had continued to complain *662 of back and leg pain over the years, and the sneezing episode had just exacerbated that condition.
Also in 1991, claimant requested authorization for dental care. Claimant testified in a deposition taken November 4, 1991, that he had been having problems with his front tooth ever since the industrial accident. Claimant’s request for dental care was denied and he ultimately received unauthorized treatment from Dr. Schnare, who performed a root canal on claimant’s front tooth. Dr. Schnare did not testify at the hearing and no written report or deposition was introduced as evidence.
Claimant filed claims for past and future medical care rendered by Drs. Cohen and Schechter and for dental care rendered by Dr. Schnare. The employer/carrier defended on the grounds that all reasonable and necessary treatment was provided, that the medical care was not authorized, and that the medical care was unrelated to the industrial accident.
In the order on appeal, entered in excess of one year after the hearing, the JCC denied all requests for medical treatment, concluding in part that (1) reasonable treatment and care had been authorized since the date of the accident; (2) no competent medical evidence was presented to establish that the back surgery was causally related to the industrial accident; and (3) claimant failed to relate the need for dental surgery to the industrial accident.
Specifically, with regard to the lumbar surgery, the JCC found:
Whatever occurred in the fall of 1991, causing the claimant’s back to go out and resulting in surgery in January of 1992, at the L5-S2 level, has not been causally connected to the industrial accident by sufficient medical documentation. The reasonable authorized medical care provided to the claimant by the employer/carrier has not resulted in any findings or any test results to show that the claimant suffered an injury at the L5-S1 level to the extent argued by the claimant_ Dr. Schechter did not have available to him the medical records from the various treating physicians and Dr. Schechter’s opinion as to causation is based solely on the history given by the claimant. Sufficient competent substantial evidence does not exist to causally relate the claim of the claimant to the industrial accident of July 7, 1986.
More significantly, the JCC found that Dr. West “did not find significant physical evidence of any problems other than some abnormalities in the cervical region....” We find this latter finding to be erroneous, rendering the JCC’s denial of the claim for treatment by Drs. Cohen and Schechter flawed.
The decision of the JCC must be affirmed if supported by competent substantial evidence. Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983). However, we must reverse when, as here, it appears that the JCC overlooked or ignored evidence in the record. King v. Winn Dixie Stores Inc., 637 So.2d 66 (Fla. 1st DCA 1994). Significantly, Dr. West in 1987 found persistent muscle spasms in the lumbar spine as well as a narrowing of the L5-S1 intervertebral space — the exact level where surgery was ultimately performed. Hence, some four years before lumbar surgery was undertaken, Dr. West had documented lumbar problems. The JCC never acknowledged or addressed this portion of Dr. West’s written report. While there is no indication that Dr. West causally related these problems to the industrial accident, his findings are nevertheless of consequence and may be interpreted as corroborative of Dr. Schechter’s opinion on causality.[1] Because it appears the JCC may have overlooked, ignored, or misinterpreted relevant portions of Dr. West’s report, and since we cannot determine whether the JCC would have reached the same conclusion after considering this medical evidence, we ■must reverse and remand for the JCC to make specific findings on this issue. See Patton v. Metal Industries, 636 So.2d 891 (Fla. 1st DCA 1994).[2]
*663-665 We affirm the JCC’s denial of the claim for dental care. Claimant failed to demonstrate that the root canal surgery performed by Dr. Schnare was either medically necessary or causally related to the work accident. See Eques v. Best Knit Textile Corp., 382 So.2d 736 (Fla. 1st DCA 1980) (where CSE supports JCC’s finding that claimant did not sustain impairment causally related to industrial accident, it follows that claimant could not show that treatment was reasonable and necessary to excuse failure to obtain prior authorization); section 440.13(2), Fla.Stat. (Supp.1986).[3]
AFFIRMED in part, REVERSED in part, and REMANDED.
BARFIELD and MINER, JJ., concur.

. This court’s vantage point is not inferior to that of the JCC in interpreting medical reports and letters. McCabe v. Bechtel Power Corp., 510 So.2d 1056 (Fla. 1st DCA 1987); Metropolitan Transit Authority v. Bradshaw, 478 So.2d 115 (Fla. 1st DCA 1985).

. Our holding should not be construed as an indication one way or another as to how the JCC should treat Dr. West's medical findings.

. We decline to discuss the remaining points raised on appeal.