ERVIN, Judge,
dissenting.
Claimant, Sandra Purvis, appeals from a workers’ compensation order denying her claim for an adjustment in her average weekly wage (AWW), interest and penalties, past due payments of compensation and reasonable attorney’s fees and costs. Purvis argues that the judge of compensation claims (JCC) erroneously determined that her industrial injury of December 6, 1991, was only a temporary exacerbation of a prior work-related injury suffered on October 15, 1990, and not a new, separate injury, and that if the JCC had correctly decided that she sustained a second industrial injury, she would be entitled to an increase in her AWW as a result of an increase in her wages after the first accident. I agree with claimant’s argument and would therefore reverse and remand the case for further proceedings consistent with this dissent.
On October 15,1990, Purvis was injured in a lifting incident and was thereafter treated by Dr. Jan Jensen, a chiropractic physician, who diagnosed her injury as a cervical sprain causing pain primarily in the neck, although his care included both claimant’s upper and lower back. Dr. Jensen returned Purvis to full-duty work on December 10, 1990, and opined that she had thereafter reached maximum medical improvement (MMI) with no permanent impairment (PI).
On December 6, 1991, Purvis experienced a second lifting injury and returned to Dr. Jensen, this time complaining of pain primarily in the right sacroiliac joint, lumbosacral area. Dr. Jensen diagnosed sacroiliac and lumbosacral sprain. He stated that, unlike the treatment rendered following the earlier incident, the care he provided was primarily to the lumbosacral spine and that the two injuries were distinct.
On September 23, 1992, claimant came under the care of Dr. Patricia Gritti, another chiropractic physician, who diagnosed her injury as sciatic and lumbosacral sprain. Dr. Gritti opined that as of December 14, 1992, claimant was able to return to light-duty work with severe restrictions, which have as yet not been removed.
In reaching his decision that the December 6, 1991 injury was simply a recurrence or temporary exacerbation of the October 15, 1990 injury, the JCC relied primarily upon Dr. Jensen’s testimony, which recounted that following the October 15, 1990 accident, he had frequently treated claimant for complaints of pain in both her lower and upper back as well as her neck. This apparently led the JCC to conclude that Purvis had injured her lower back on both occasions and, therefore, because she had not healed from the earlier back injury, the later injury was but a recurrence of the former. In doing so, however, the JCC employed the wrong legal test. The appropriate test for deciding whether a claimant suffered an independent injury from an earlier injury depends not on whether the successive injuries occurred in the same anatomical area and required treatment of the same area, but whether it can be said that at the time of the second incident, claimant remained disabled from the effects of the first injury.
*1162 Recently, in another successive-injury case, this court, in determining that claimant had suffered a new injury, cited with approval the following rule applicable to apportionment eases: “[I]f there is no evidence that a prior injury was disabling at the time of the industrial accident, or that it had progressed to the point of causing disability at time the award is made, it is improper to apportion out of the award a preexisting condition.” Luttrell v. Roger Holler Chevrolet, 625 So.2d 921, 925 (Fla. 1st DCA 1993) (emphasis added). In concluding that Luttrell’s later injury could not be found to be an exacerbation of the earlier injury, we observed that the evidence clearly disclosed that Luttrell had suffered no disability following his earlier industrial injury, as no showing had been made that, as of the time of the later accident, the former injury had so incapacitated him from carrying on, in any field of endeav- or, work which would equal or surpass the wages which he was receiving when he sustained his first accident. Id. at 925-26 (citing City of Hialeah v. Warner, 128 So.2d 611, 613 (Fla.1961)). Moreover, Luttrell, similar to claimant at bar, had, following the first accident, been released to return to work without any restrictions and was at MMI with no PI rating. After the second accident, however, several physicians opined that Luttrell was then at MMI with various percentages of impairment. In reaching our decision, we also relied on the statutory definition of disability as “ ‘incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury.’ ” Id. at 925 (quoting § 440.02(10), Fla.Stat. (1989)).
Similarly, in Delgado v. Blanco & Sons Catering, 606 So.2d 658 (Fla. 1st DCA 1992), we reversed an order denying a claim for surgical repair of a hernia and temporary disability benefits, noting that the attending physician’s opinion that claimant' had suffered a compensable aggravation of a preexisting condition was corroborated by other evidence in the record showing that before the occurrence of the industrial accident, claimant’s prior condition had never disabled him from working. Instead, the record disclosed that claimant had continued to perform his job, notwithstanding pain, even after being diagnosed with an inguinal hernia. We therefore concluded that claimant’s condition at the time of the industrial accident could not be considered disabling, because it did not incapacitate him from earning in the same employment the wages which he had been receiving from the time his condition was diagnosed until the time of the industrial accident.
Although Dr. Jensen testified that he frequently treated Purvis following the first industrial injury, including a substantial period of time after he had released her to return to work without limitations, his medical notes also reflect that she was last seen in his office for treatment of such injury on August 22, 1991, and that she did not return for further care until after the occurrence of the second incident, or more than three months later. Additionally, although one of claimant’s supervisors produced claimant’s employment records for 1991, showing that she had missed a number of days from work, she admitted that Purvis had suffered a later, unrelated ankle injury and that the record of days missed from work did not distinguish between her ankle injury and the industrial injury of October 15, 1990. In any event, no evidence was offered showing that Purvis missed any work or was treated for any injury from September 1991 through the date of the second injury of December 6, 1991. Thus, both the records of the claimant’s treating physician and those of her employer belie any contention that claimant was disabled, or incapable of earning wages in an amount equal to that earned at the time of the first accident, immediately before the occurrence of her second industrial injury. Hence, it must be concluded that there is no competent, substantial evidence to support the conclusion that claimant’s later injury was only a recurrence of the former.
The test Florida courts use to determine whether a claimant’s disability causally derives from a later incident, or whether that incident represents a recurrence of an earlier injury, is consistent with that employed by a number of out-of-state courts. In Rumford Press v. Travelers Insurance Co., 125 N.H. *1163 370, 480 A.2d 162,165 (1984), the court made the following observations:
An important initial determination will be whether the original work-related injury produced a debilitating condition that continued until the alleged second injurious incident. Where the evidence demonstrates that at the time of the second incident the claimant suffered from an ongoing debilitative condition, establishing that the second incident is an independent cause of the disability will, of necessity, be more difficult. In such a situation, it will have to be shown that the second incident produced results that are not only tied to the disability but have intervened to the extent that they were an independent cause of the disability.
(Emphasis added.)
Again, in Belton v. Carlson Transport, 658 P.2d 405 (Mont.1983), the court rejected the contention that a claimant must have completely healed from the effects of a prior injury before it could be said that the claimant suffered a later, distinct injury. In so deciding, the court observed that doctors will rarely if ever opine that an injury has completely healed, but that physicians will frequently testify regarding whether a particular injury has reached the point of maximum healing. The court continued that even a doctor’s affirmative statement that MMI had been reached did not necessarily mean that the injured person was free of symptoms from the former injury. Id. at 408.
The above case law echoes Professor Larson’s treatise on workers’ compensation law, wherein he observes: “In order to find that there has been an aggravation, it must be shown that the second episode contributed independently to the final disability.” 4 Arthur Larson, Law of Workmens’ Compensation § 95.22, at 17-126 (1994).
Applying the above test to the facts in the instant case, I find no support for the conclusion that claimant’s second injury was but an exacerbation of the earlier injury, because nothing in the record shows that Purvis was disabled as of the date of the second industrial injury. Before that date, Purvis had been released to return to work without restrictions and had fully performed her work for more than three months before the second injury, but, following the second incident, she has been limited to light-duty work, and no medical opinion has yet been reached regarding her MMI status. As a consequence, under the Larson test, the December 6, 1991 injury must be considered a new injury and not a recurrence of the former.
I would therefore reverse the JCC’s denial of benefits and remand the case for further proceedings consistent with this opinion.