ERVIN, Judge,
concurring and dissenting.
I concur with the majority in its disposition of all issues except those relating to whether the judge of compensation claims (JCC) erred in (1) finding that claimant, Raymond Murphy, suffered only a two percent permanent impairment (PI) as a result of his second industrial accident of June 28, 1993, and (2) denying the claim for wage loss. I would reverse and remand as to these two issues. In my judgment, the JCC misinterpreted the attending physicians’ testimony and the provisions of the Florida Guides,[2] as well as pertinent Florida statutes, in ruling that Murphy had experienced only a two percent PI as a result of his second work-related injury. Moreover, it appears that the JCC did not consider whether claimant’s later industrial accident aggravated his prior condition and, if so, whether the PI rating from the first industrial injury should be combined with that following the second to create an overall greater PI, thereby resulting in a correspondingly greater increase in wage-loss benefits.
On November 27, 1989, claimant sustained his first work-related injury to his lower back while doing drywall punch-out work for an employer other than appellee, Northeast Drywall. As a consequence of this injury, his authorized physician, Dr. Delgado, a neurosurgeon, performed a laminectomy at the L5-S1 level of claimant’s back, and thereafter placed him at maximum medical improvement (MMI) on May 17, 1990, with a five percent PI rating pursuant to the AMA Guides.[3] Dr. Delgado also placed restrictions on claimant’s work activities, i.e., that he not lift weights in excess of 35 pounds or engage in repeated bending or stooping.
On December 31, 1990, claimant was involved in a noncompensable automobile accident, which aggravated his low-back injury. An MRI showed a recurrent herniated disc at the same L5-S1 level. Despite claimant’s continuing physical limitations following his first surgery, and the aggravation of his back condition caused by the automobile accident, claimant was able to return to drywall employment. He engaged in such labor for approximately a year and a half before his second industrial accident on June 28, 1993, when he was working for appellee and again injured his lower back while descending a ladder. Thereafter, on August 12, 1993, claimant was involved in a second noncom-pensable automobile accident, which the JCC found did not contribute to his industrial injury. An MRI performed on October 21, 1993, revealed, as did the earlier MRI, a recurrent herniated disc at the L5-S1 level. Finally, on March 2, 1994, claimant underwent a laminectomy and diskectomy, followed by a spinal fusion.
In her final order, the JCC approved the parties’ stipulation that claimant reached MMI on October 28, 1994, from the second compensable injury and, due to her interpretation of the Florida Guides, the JCC found that claimant had sustained a two percent PI rating. Based on that two percent PI rating and the 1990 amendments to the Workers’ Compensation Law limiting wage-loss benefits to the PI rating resulting from the second industrial injury, the JCC ruled that claimant was entitled to wage-loss benefits for only 26 weeks following MMI. The JCC *921 concluded that by voluntarily paying such benefits, the employer and insurance carrier (collectively the E/C) had discharged all of their obligations in regard to wage loss. Having found that the E/C owed no further compensation benefits to claimant, the JCC considered it unnecessary to decide whether the 1994 surgery was causally related to the first or second industrial accident or to the motor vehicle accidents.[4]
In restricting claimant to a two percent PI rating with a consequent wage loss of 26 weeks, the JCC ignored the statutory definition of PI, which predated the 1990 amendments to the Workers’ Compensation Law, but which remained unaffected by those changes. Section 440.02(19), Florida Statutes (1993), in effect at the time of claimant’s second industrial accident, defines PI as “any anatomic or functional abnormality or loss, existing after the date of maximum medical improvement, which results from the injury.” (Emphasis added.)[5] The legislature, in the same act, discarded the system that had generally made wage-loss benefits available based upon a showing that the claimant’s wage loss resulted from the compensable injury, and replaced it with a system whereby the amount of wage-loss benefits was determined by the degree of a worker’s PI for injuries occurring after June 30, 1990.[6] § 440.15(3)(b)(4), Fla.Stat. (1993). For example, one who suffered a PI rating up to and including three percent was, pursuant to the 1990 amendments, entitled to 26 weeks of wage loss. § 440.15(3)(b)(4)(d)(I), Fla.Stat. (1993). I find nothing, however, in any of the pertinent statutes revealing a legislative intent to restrict a claimant’s wage-loss benefits to only the last of several surgical procedures in instances wherein a prior injury or condition is aggravated by a later industrial injury.
My conclusion is reinforced by the fact that many of the statutes on which disability had formerly been determined were unaffected by the 1990 amendments. For example, section 440.02(1), defining accident, provides in part that “[wjhere a preexisting disease or anomaly is accelerated or aggravated by an accident arising out of and in the course of employment, only ... acceleration or aggravation of the preexisting condition reasonably attributable to the accident shall be compen-sable, with respect to ... permanent impairment.” (Emphasis added.) Section 440.02(17), moreover, defines injury in part as “personal injury or death by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury.” Finally, section 440.15(5)(a) provides that a previous disability or impairment shall not preclude an employee from receiving benefits for a subsequent aggravation or acceleration of the preexisting condition.
These statutory provisions clearly indicate that in a proper case, the Pis from two or more injuries may be combined into a greater rating; yet, the JCC never determined whether an aggravation occurred, and she appears to have assumed that she was required by the statutory changes to establish a PI rating only in regard to the surgical procedure following the second industrial accident and not the actual injury.[7] If, as I *922 believe, this was her intent, her conclusion is, in my judgment, clearly inconsistent with the legislative purpose.
Some of the confusion in the present case ensued from the Florida Guides, adopted pursuant to section 440.15(3)(a)(3). The stated purpose of the disability rating guide was that it “shall be more comprehensive than the AMA Guides to the Evaluation of Permanent Impairment and shall expand the areas already addressed and address additional areas not currently contained in the guides.” Id. Unfortunately, the PI rating established by the Florida Guides in this case had precisely the opposite effect, as is apparent from the testimony of claimant’s two attending physicians. Dr. Delgado, who participated in both operations, stated that the rating under the Florida Guides for the first surgery would have been nine percent and there would be an additional two percent rating for the second surgery, giving claimant a whole body rating of eleven percent following the second surgery. When questioned whether the nine percent would be attributable to the first surgery and the additional two percent to the second, Dr. Delgado replied that most of claimant’s problems appeared to be related to the first surgery, in that he had reinjured his back and undergone a second surgery, including a spinal fusion. Nevertheless, Dr. Delgado stated that he would defer to the opinion of another attending physician, Dr. Vega, as to the extent of claimant’s PI. He commented, moreover, that it was very difficult for him to separate the two injuries, that is, assign a separate percentage to each. Dr. Delgado also pointed out that the second surgery involved not only the left side of claimant’s back, which had previously been operated on, but the right side as well, because a bilateral hemilaminectomy had been later performed.
The difficulty of assigning a proper PI rating to claimant’s injury was even more evident in Dr. Vega’s testimony. Dr. Vega, an orthopedist, was claimant’s second attending physician who treated him following the later industrial accident and assisted Dr. Delgado during the second surgery. Dr. Vega stated that he had placed claimant at MMI on October 28, 1994, with a nine percent PI referable to the second surgery, because it involved a hemilaminectomy and a spinal fusion, which he understood the Florida Guides to consider together. Dr. Vega also referred to a portion of the Florida Guides relating to a recurrent disc condition at the same level, such as that suffered by claimant, which provided that a surgically treated lesion, including a fusion of the lumbar spine, was given a nine percent rating. He further opined that for multiple operations, with or without residual signs of injury, two percent should be added for a second operation.
Dr. Vega was emphatic in denying that once the second surgery was performed, claimant would be confined only to an additional two percent PI rating. He understood the Florida Guides to provide that the second surgery taken by itself would result in a rating of nine percent because the surgery included a fusion. Dr. Vega testified that he could not conceive that submitting a patient to a second surgical procedure of a hemilami-nectomy and diskectomy, in addition to a spinal fusion, could result in a PI rating of only two percent. Finally, Dr. Vega opined that his understanding of the Florida Guides, which provided for multiple operations with or without residual signs of injury, was that two percent should be added to the preceding impairment rating of nine percent for a total of eleven percent, and that such rating would be reasonable for claimant’s condition.
The issue was clearly before the JCC regarding whether the June 28, 1993, accident was an aggravation of a preexisting condition or only a temporary exacerbation, by reason of the E/C’s defense. Yet the JCC never made this critical determination, apparently deciding instead that she was required by the Florida Guides to assign only a two percent impairment rating to the surgery following claimant’s second industrial accident. As the JCC has made what I consider to be an incorrect interpretation of the Florida Guides, this case must be, in my judgment, remanded for the purpose of deciding such *923 issue. Her determination would depend upon a combination of both lay and expert testimony.
In reaching her determination, the JCC should consider that claimant was able to carry out his employment responsibilities within his assigned restrictions for a year and a half before he suffered his second industrial accident. Compare this case with Luttrell v. Roger Holler Chevrolet, 625 So.2d 921 (Fla. 1st DCA 1993). In Luttrell, we pointed out that in cases involving a claim between an employer and an employee, apportionment of an employee’s preexisting condition is warranted only to the extent that the prior condition either was disabling at the time of the accident and continued to be so at the time the award is made, or was producing no disability at the time of the accident but through its normal progress is doing so at the time an award is made. Id. at 924r-25. If, however, there is no evidence that a prior injury was disabling at the time of the industrial accident, or that it had progressed to the point of causing disability at the time the award is made, it is improper to apportion the amount of the award for a preexisting condition. Id. at 925. We noted that these principles, which the Florida Supreme Court adopted in Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967), have been applied not only to cases involving apportionment, but also to cases involving whether an industrial accident caused an aggravation of claimant’s prior condition. Id. Accord Tejada v. Collection Chevrolet, Inc., 594 So.2d 340 (Fla. 1st DCA 1992). If, on the other hand, the employment does not contribute to the injury because there is no causal connection, then no compensable injury can be established. CNA Ins. Co. v. Kemper Ins. Co., 596 So.2d 81 (Fla. 1st DCA 1992); Honeywell, Inc. v. Scully, 289 So.2d 393 (Fla.1974).
The majority states that appellant never advanced the position argued in this dissent — that of aggravation. Although I agree that appellant did not explicitly use the term aggravation, he repeatedly referred to the occurrence of two injuries and surgeries throughout his briefs. For example, he quoted extensively from Dr. Vega’s testimony regarding the application of the Florida Guides wherein Dr. Vega interpreted those guidelines to mean that claimant should be assigned a nine percent rating for the first lumbar fusion and an additional two percent for the second surgery, which, when combined, resulted in an overall PI assessment of eleven percent. The clear import of claimant’s argument, taken as a whole, is that claimant suffered two injuries to the same location on his lower back, and that he underwent two surgeries in an attempt to correct or alleviate his condition, which accorded him the total of the PI ratings assigned in the Florida Guides to both surgeries. It is therefore inconceivable to me that claimant can be said to have waived the argument that he is entitled to have the ratings of both operations combined.
Certainly, the E/C, in its answer brief, was under no misapprehension that claimant’s argument referred to anything other than the combined effects and resulting PI ratings from both surgeries. In fact, the E/C’s argument throughout its brief is simply that the Florida Guides assign a two percent PI rating solely as a result of the industrial injury, which, the E/C contends, means that only the second of the two work-related accidents is encompassed.
As previously observed, the employer had defended the claim on the ground, among others, that the second asserted injury was but a temporary exacerbation of the earlier injury. This court has long recognized that if a second injury is characterized as an exacerbation or recurrence of the prior injury, rather than an aggravation or a new injury, and if the second injury does not contribute to the causation of the second, or any ensuing disability, the E/C on the risk at the time of the second accident is relieved from any consequent liability. See CNA Ins. Co. v. Kemper Ins. Co., 596 So.2d 81 (Fla. 1st DCA 1992); Structural Sys., Inc. v. Worthen, 463 So.2d 502 (Fla. 1st DCA 1985); U.S. Elec. Co. v. Sisk Elec. Serv., Inc., 417 So.2d 738 (Fla. 1st DCA 1982). The JCC below did not, however, find the second injury to be a temporary exacerbation of the first injury, but rather, by assigning a two percent PI proportion to the second injury, found in *924 effect that claimant had suffered a new, work-related injury. In restricting the claimant to such rating, the JCC accepted the E/C’s argument that the Florida Guides permitted assessment of the surgical procedure from only the last of the two accidents.
In my opinion, the JCC erroneously interpreted the pertinent provisions of the Florida Guides relating to claimant’s injury, and, because we as a reviewing court are not bound by such construction, but are rather on an equal footing with the JCC in determining the correct law to be applied, the order should therefore be reversed and the cause remanded for further proceedings. See State Farm Mut. Auto. Ins. Co. v. Gage, 611 So.2d 39 (Fla. 4th DCA 1992) (on reh’g).
If, as I believe, remand is necessary, and it is determined that claimant’s second industrial accident aggravated his prior condition, it is of course possible that there may be an allocation of liability between the carriers on the risk at the time of the first and second injuries. This issue is not, of course, before us. But if the question may later arise, the parties should be aware of the provisions of section 440.42(3), Florida Statutes (1993), and section 440.15(5)(a), as well as such decisions as Cruise Quality Painting v. Paige, 564 So.2d 1190 (Fla. 1st DCA 1990); Custom Architectural Metals v. Bradshaw, 623 So.2d 804 (Fla. 1st DCA 1993); and Roz Fischer’s Beauty Unlimited v. Mathis, 644 So.2d 127 (Fla. 1st DCA 1994).

. "Florida Impairment Rating Guides.”

. “American Medical Association’s Guides to Evaluation of Permanent Impairment.”

. Inconsistently, however, the JCC had earlier determined that the August 12, 1993, automobile accident did not contribute to claimant’s industrial injury.

. The above definition refers to impairments ensuing from injury, not from a surgical procedure, yet the JCC solely focused upon the surgery in concluding that claimant suffered only a two percent PI. I find it difficult to believe that the legislature intended to make the terms “injury” and "operation" synonymous, or that the latter term was intended to supersede the former, when it delegated to a three-member panel, in cooperation with the Division of Workers’ Compensation, the power to establish a uniform disability rating guide by January 1, 1991. See § 440.15(3)(a)(3), Fla.Stat. (1993). Nevertheless, the parties have apparently assumed in their briefs that the rating assigned to an employee's surgery in the Florida Guides is the means by which a PI rating is determined, and I will accept their arguments in this case. My conclusion in this regard does not, however, affect my belief that the JCC erred in assigning only a two percent PI rating to claimant's second surgery.

. This system has since been substantially revised. See Ch. 93-415, § 20, Laws of Fla. (1994).

. This conclusion is apparent from the JCC’s order, wherein she found that the medical evidence established a nine percent PI from the first operation and an additional two percent from *922 the second, yet the JCC declined to combine the two ratings, but instead restricted claimant to a two percent rating as a result of only the second procedure.